MUTUAL BENEFIT LIFE INSURANCE CO., Respond-
ent, v. WINNE et al., Appellants.

[Submitted May 25, 1897. Decided June 14, 1897.]

*Foreign Corporations, Contracts of—Curative Acts, Constitu-
tionality of—Statutes, Amendment of.*

Compiled Statutes 1887, chapter 24, section 444, which provides that all acts and contracts made by a foreign corporation before it shall have filed certain statements and certificates are void and invalid as to such corporation, makes a mortgage given to such a corporation before it has complied with the law merely voidable.

Section 1034 of the Civil Code provides that "any foreign corporation that has heretofore engaged in business, performed acts or made contracts in this state, may, within ninety days from the date this act goes into effect, comply with the provisions hereof, and thereupon all its acts and contracts done and made before this act goes into effect shall be valid and enforceable, any statute of this state heretofore enacted to the contrary notwithstanding." *Held,* (a) That the purpose of the law was merely to make valid and enforceable contracts made by foreign corporations which were voidable because of a failure to file certain statements and certificates by law required, and does not refer to or make valid contracts of such corporations which are void for other reasons: (b) That the above law does not violate section 13, article 15 of the State Constitution, which is as follows: "The Legislative Assembly shall pass no law for the benefit of a railroad or other corporation or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the state a new liability in respect to transactions

or considerations already passed." (c) That the above law is a curative statute, and is not retrospective within the above section of the constitution, as it does not inter- fere with any vested right or impair the obligation of any contract.

A bill which subsequently becomes a law, may be amended by another bill which is in- troduced before, but passed after, the bill which it amends becomes a law.

*Appeal from District Court, Lewis and Clarke county. Henry N. Blake, Judge.*

ACTION by the Mutual Benefit Life Insurance company, a corporation, against Peter Winne and another. Judgment for plaintiff, and defendants appeal. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff and respondent herein, a corporation organized and existing under the laws of New Jersey, brought this ac- tion on December 4, 1894, to recover judgment upon a note made · by the defendant and appellant Peter Winne for $45,- 000, and to foreclose a mortgage given as security therefor. Both note and mortgage bear date October 21, 1890. On August 22, 1892, Winne conveyed the premises to the de- fendant the Denver & Helena Building company, which as- sumed and agreed to pay the principal of the note. It is alleged in plaintiff's complaint that on August 13, 1895, plaintiff, in order to comply with the laws of the state of Montana relative to foreign corporations, filed with the Secre- tary of State and the County Clerk of Lewis and Clarke county, Montana, a duly-authenticated copy of its charter, and also a statement, verified by the oaths of the president and the secre- tary of the plaintiff, and attested by a majority of the board of directors, showing its name, the location of its principal office and place of business without the State of Montana and within the State of Montana, the amount of its assets, etc. It also averred that the plaintiff, on August 13, 1895, and at the time of the filing of the statement just last referred to, filed with the Secretary of State of Montana and the County Clerk of Lewis and Clarke county a certificate under its corporate seal and under the signatures of its president and secretary, certifying that said plaintiff has consented to be sued in the

courts of Montana upon all causes of action arising against it in said state, and that service of summons might be made upon John B. Clayberg, Esq., and that service, when made upon him, should be valid service on the plaintiff ; and stating that the principal place of business of plaintiff in Montana is at the city of Helena; and that the written consent of said Clayberg to act as agent was also filed at the same time.

It is next averred that plaintiff, prior to 1890, and before doing any business or making any contracts in Montana, and in the month of March, 1890, appointed an agent in Lewis and Clarke county, in said state, upon whom service of process could be made, and filed with the State Auditor a written instrument containing all the facts and items, as required by section 583, Fifth Division of the Compiled Statutes of Montana; that prior to 1890, and in March, 1890, a certificate of authority was issued to plaintiff that it had complied with all the requirements of chapter 29, Fifth Division of the Compiled Statutes of Montana, and that annually since prior to 1890 plaintiff has filed with the Auditor of the state statements as required by chapter 29, div. 5, Laws 1887.

Defendants answered, denying the incorporation of plaintiff and the filing of the copy of the charter with the Auditor. They also denied that plaintiff had complied with section 583, Fifth Division of the Compiled Statutes, in any respect, or that it had appointed an agent or attorney upon whom process could be served before doing business in the state; denied that plaintiff complied with the provisions of chapter 29 aforesaid, or that the Auditor was authorized to give any certificate that plaintiff had complied with said chapter 29; denied that plaintiff has a duly-appointed attorney upon whom process could be served; denied that plaintiff ever complied with any of the provisions of chapter 24, Fifth Division of the Compiled Statutes, and alleged that Sections 1034 and 1035 of the Civil Code are a nullity, and that house bill No. 150, which included said sections, was not a bill to amend a law, but a bill to amend a bill, and of no effect. Defendants also set up that, if said bill became a law, it took effect March

19, 1895, and that plaintiff has been doing business in Montana since 1886, and never was entitled to receive a license to transact business.

The case was heard by the District Court without a jury. Plaintiff moved for judgment on the pleadings. The court decided that plaintiff was entitled to such a judgment, but ordered certain proofs to be taken, showing the transaction of plaintiff with the State and Territory of Montana as shown by the records in the office of the State Auditor, and defendants excepted to the ruling of the court in not allowing them to offer proofs under their answer. Judgment of foreclosure and sale was ordered for plaintiff. From this judgment, and an order overruling a motion for a new trial, defendants appeal.

*B. P. Carpenter, A. K. Barbour* and *J. W. Kinsley,* for appellants.

Plaintiff has no legal existence. While perhaps this point might be unavailing and obnoxious if raised by Winne alone, an original contractor, it stands differently when raised by the defendant building company, third parties, purchasers for value, and not original contractors. The complaint does show that the plaintiff is a foreign incorporation and as such only entitled to do business under certain conditions, and the complaint does not show those conditions to have been complied with. Plaintiff never complied with the provisions of Chapter 24 of the Fifth Division of the Compiled Statutes of Montana. The statute provides that all acts and contracts made by any foreign incorporation during the time it shall fail or neglect to file said required statement and certificate ''shall be void and invalid as to such corporation,'' as well as adds a penalty. (Compiled Statutes, page 722, § 445.) The terms of this statute are so plain (''shall be void and invalid,'' not voidable) that no authority need be cited to assist in its interpretation. The general rule is that a contract prohibited by law is an illegal contract, and a party entering into such a contract cannot enforce it. (See *Powder R. C. Co.* v. *Commissioners of Custer County,* 9 Mont. 145-51; *Insurance Co.*

v. *Wright*, 55 Vt. 520-533; *White River Lumber Company* v. *Southwestern Improvement Association*, 18 S. W. 1055; *Reliance Mutual Insurance Company* v. *Savage*, 160 Mass. 413; *Cary Lumber Company* v. *Lumber Company*, 22 S. W. (Tenn.), 743; *Farrior* v. *New England Co.* 88 Ala. 275-279; *Cincinnati Mut. Co.* v. *Rosenthal*, 55 Ill. 86; *Aetna Insurance Co.* v. *Harvey*, 11 Wis. 412; *Hofferman* v. *Banks*, 41 Ind. 1; *Bank of B. C.* v. *Page*, 6 Oregon 431; *Pangburn* v. *Westlake*, 36 Iowa 546; *The Pennsylvania Co.* v. *Banerle*, 143 Ill. 459; *Florsheim Co.* v. *Lester*, 29 So. (Ark.) 34. Sections 1034 and 1035 of the Civil Code were never legally enacted, and are not valid as law. The Civil Code was approved February 19th, 1895. The bill containing said sections 1034 and 1035 was introduced February 1, 1895, and a substitute for the original bill was introduced February 7, 1895, and was approved by the governor March 19th, 1895. The bill, therefore, was not a bill to amend a law, but was simply a bill to amend a bill, as the Civil Code had not become a law at the time of the introduction of said bill. The bill was a bill to amend something not in existence, and therefore nugatory. (*State* v. *Benton*, 51 N. W. 141; *Louisville N. R. Co.* v. *City, etc.*, 25 N. E. 962; *Wall* v. *Garrison*, 19 Pac. 469, *People* v. *Hills*, 35 N. Y. 449.) A bill to amend something not in existence is void. It matters not whether the act has not at the time been passed, or has been repealed. The title of such a bill is really no title and gives no notice whatever. A bill does not become a law until approved by the Governor. (Constitution, § 12, Article 7.) Laws and not bills are subject to amendment by other laws. (Constitution, § 25, Article 5.) A bill is not amendable by statute, but by motion, according to the rules of parliamentary law. (*People* v. *Devlin*, 33 N. Y. 278.) The said sections 1034 and 1035 are in violation of the Constitution of Montana, and void. (a.) Section 1034 is in violation of section 11 of article 15 of the Montana Constitution, as it allows foreign incorporations to exercise and enjoy within this state greater rights and privileges than those possessed or enjoyed by cor-

porations of the same or similar character created under the laws of this state. If that section is valid, any unlawful act or contract of plaintiff performed or entered into before August 13th, 1895, is made lawful and valid. Thus, as applied to plaintiff, the statute of frauds is repealed; any fraudulent act is made honest and legal; any crimes and any invasion of vested rights are made legal; and any *ultra vires* act is confirmed. The language of section 1038 of the Civil Code is very different and contains the usual provisions for validating previous unauthorized acts. (b.) Said sections 1034 and 1035 are in violation of section 13 of article 15 of the Montana Constitution. They are retrospective in their operation, and are for the benefit of corporations. This clearly appears from the language of the sections. (Cooley on Constitutional Limitations (4th Ed.), page 462, note 1; Wade on Retrospective Laws, § 161; *Decell* v. *Lewenthal*, 57 Miss. 331; *Auding* v. *Levy*, 57 Miss. 51; *Banshor* v. *Mansel*, 47 Me. 58; *New York & Oswego* v. *Van Horn*, 57 N. Y. 477; *Normal School District* v. *Blodgett*, 155 Ill. 477; Endlich on Int. of Statute, § 448 and note *a*; Sutherland on Con. of Statute, § 206.) These sections being retrospective and in violation of section 13 of article 15, they are also obnoxious to section 26 of Article 3 of the Montana Constitution. (*New York & Oswego* v. *Van Horn*, 57 N. Y. 477.) Cases arising in states in which retrospective laws are not prohibited and holding retrospective acts to be valid, are not applicable to the case at bar. If said sections 1034 and 1035 are valid as independent acts the plaintiff could have been aided by them only by complying with their provisions prior to August 13th, 1895. (a.) It has sometimes been held that the attempt of the legislature to amend a supposed act, but one not existing, has resulted in the passage of a valid independent statute. (*People* v. *Canvassers*, 143 N. Y. 84; *People ex rel. Furman* v. *Clute*, 50 N. Y. 456.) (b.) If these sections are valid as an independent act, they took effect March 19th, 1895, and not July 1st, 1895. (c.) They do not, however, constitute a valid independent act because as such they would be insensible, and

have no meaning whatever. If said section 1034 and 1035 are valid in any respect as amendments, a compliance with them after its action had been commenced can afford no relief to plaintiff. (a.) After plaintiff had elected that the note should become due, and commenced an action to recover the amount, an act of the legislature giving to plaintiff a cause of action which he did not previously have, would be a retrospective law for the benefit of a corporation in the highest degree obnoxious to the constitution. (*The Syracuse City Bank* v. *Davis,* 16 Barb. 188.)

*McConnell, Clayberg & Gunn,* for Respondent. (The authorities cited are in the brief.)

Hunt, J.—Much of the brief of respondent's counsel is addressed to the point that a foreign life insurance company was not required to comply with the provisions of chapter 24, Compiled Statutes 1887. But we shall not examine in detail the several legislative provisions pertaining to foreign corporations under which they are entitled to do business within the State of Montana, to determine whether this position of respondents is well taken, for we shall assume for the purposes of this case that the appellant is correct in his contentions that this company was amenable to the provisions of chapter 24, Compiled Statutes.

Section 444 of that chapter provides that all foreign corporations doing business at the time of the enactment of that statute within Montana should, within a certain period of time, file in the office of the Secretary of State and in the office of the County Recorder of the county wherein they were respectively doing business certain statements and certificates required to be filed by section 442 of the same chapter. This latter section provided that foreign corporations, before doing any business of any kind, nature, or description within Montana, should file in the office of the Secretary of the Territory, and in the office of the County Recorder, a duly-authenticated copy of its charter or certificate of incorporation, and also a statement, to be verified by the oaths of the president and

secretary of such incorporation, and attested by a majority of its board of directors, showing the name of the incorporation, and various other matters of concern to the incorporation, including a certificate certifying that the said corporation consented to be sued in the courts of Montana upon all causes of action arising against it in Montana, and that service of process might be made upon some person, a citizen of Montana, whose name and place of residence should be designated, and that process, when so served upon such agent, should be taken, deemed, and held to be as valid as if served upon the company in the state and territory under the laws of which it was organized.

Section 444 then proceeded as follows : "If any such corporation shall fail for more than four months from the said publication hereof so to file said statements and certificates, or any or either thereof; or if any foreign incorporation shall hereafter attempt or commence to do business in this territory without having first filed said statements and certificates required by this chapter, it shall forfeit to the people of Montana the sum of ten dollars for every day it shall so neglect to file the same, and all acts and contracts made by such incorporation, or any agent or agents thereof, during the time it shall so fail and neglect to file said statements and certificates, shall be void and invalid as to such incorporation. It shall be the duty of the District Attorney of the county in which the business of such corporation shall be located to sue for and recover in the name of the people of the Territory the penalty above provided, and the same, when so recovered, shall be paid into the treasury of such county for the use of the common schools therein."

It is insisted by the appellant that the plaintiff had never complied with the provisions of Chapter 24 at the time that the defendant Winne made and executed the $45,000 note, to wit, October 21, 1890; and we shall proceed on the ground that no certified copy of the charter of plaintiff was ever filed with the Secretary of State before it made the loan to the defendant Winne, and that no statement verified by the oaths of

the president and the secretary of the company had been filed before said loan was made, which showed the matters and facts specified and required by said Chapter 24. We are, therefore, confronted with the necessity of deciding whether or not a foreign corporation which has failed and neglected to file the statements and certificates required to be filed can recover upon a promissory note made to such a corporation during the time it so failed and neglected to file said statements and certificates. This question ought to be settled. It has for a long time been a perplexing one to the profession, and we realize that on its solution may depend very valuable rights. In an effort to reach a correct judgment we have, therefore, given it our most earnest deliberation, sensible of the fact that learned courts have not taken the same view of statutes generally similar to ours, or applied like rules of construction.

Let us carefully consider the language of the statute. After prescribing that the corporation which omits to file the statements required shall forfeit to the state $10 a day for every day it shall so neglect to file the same, it adds the further clause by way of punishment that all acts and contracts made during the time it shall so fail to file such statements and certificates shall be void and invalid as to such incorporation.

The object of the statute is primarily to compel a foreign corporation desiring to avail itself of the privilege of doing business within the state, to submit itself to the jurisdiction of the courts of the state. It is not the policy of the statute to prevent foreign corporations from doing business within the state. It merely imposes certain conditions in order to enable the citizens of the state to effectually protect their rights, and prescribes penalties if the corporation ignores the law. The statute does not make the contract absolutely void or a nullity, nor does it attempt to prohibit contracts between foreign corporations and persons within the state. It says, in effect, contracts with such corporations shall be void and invalid as to the corporation unless it has first complied with the law.

o

What does this mean ?    We must not be misled into giving
to the words "void" and "invalid" too broad a meaning, for,
as has been well observed by a learned court, deductions
founded on the broadest meaning of the word "void" would
lead to greater errors than are found in the most erroneous
cases, while those founded on its narrower and more usual
meaning seldom err.    (*Pearsoll* v. *Chapin*, 44 Pa. St. 9.)

Therefore, before the court can say that a mortgage made
by a citizen of this state to a foreign corporation which has
failed to file its certificate and statements required to be filed
before it can undertake to do any business within the state is
void in the sense that it is an absolute nullity, it should be
assured of the correct meaning of the word; it should observe
the use of the word in the context of the statute.

A void contract is the same as none, although a voidable
one may be so treated.    (*Gist* v. *Smith*, 78 Ky. 367.)    The
two words "void" and "voidable," as often used in the
statutes, have been pronounced by Bishop (Section 610 of his
work on Contracts) to be variable, and most inexact.    But a
correct discrimination will lead us to a right conclusion.    It
cannot be held that the contract of Winne with the plaintiff
corporation is without any legal effect, for it has some effect,
but it is liable to be made void by him or a third person. For
illustration :    Winne could enforce an agreement for a loan
with a foreign corporation that had not complied with the
law, if service could be had upon it, if it had agreed to make
one to him, and thus give full effect to such a contract which
already had some effect even under the statute; or, if a loan
had been made to him, Winne could give full effect to such a
contract by paying the corporation, or not asking to have the
contract held void.    In both of these illustrations, however,
there would be some legal effect to the contracts when entered
into.    They would, therefore, not be void contracts within
the true definition of the word, even though in either supposed
case Winne could make either contract void if he chose to do
so.    And so in this foreclosure proceeding, when Winne made
the note and mortgage sued upon, and delivered them to the

foreign corporation's agent, a contract was made with the corporation which was enforceable in the courts of this state, except for the statutory provisions by which Winne could ask to have it declared void and invalid; that is to say, the note was voidable, but might become void when the mortgagor chose to avoid it.

Bishop, in his work on Contracts (Section 611), says that in exact language "void" has but one meaning, and that "a contract is 'void' when it is without any legal effect, 'voidable' when it has some effect, but is liable to be made void by one of the parties or a third person." Some of the cases refer to contracts as void which may be avoided by those interested, yet define the word as applying to contracts not absolutely, but relatively, void. *Kearney* v. *Vaughan*, 50 Mo. 284, was such a case. There the court said it was perhaps unfortunate that it was not supplied "with a term of more precision than the word 'void,' a word more often used to point out what may be avoided by those interested in doing so than to indicate an absolute nullity—a proceeding or act to be disregarded on all occasions." And in *Pearsoll* v. *Chapin, supra,* which is a leading case, Chief Justice Lowrie took the same general ground that Bishop has taken, and wrote as follows : "The terms 'void' and 'voidable,' as used in our books, would therefore seem to stand for absolutely and relatively void. That is absolutely void which the law or nature of things forbids to be enforced at all, and that is relatively void which the law condemns as a wrong to individuals, and refuses to enforce as against them. It is void because absolutely or relatively invalid, or not binding. The French *jurisconsults* adopt this distinction of absolute and relative nullity."

The discrimination between a deed which is an absolute nullity and one which is voidable only is very clearly made by Chief Justice Spencer in *Anderson* v. *Roberts*, 18 Johns. 516. In discussing the attitude of a fraudulent grantee under a statute declaring a deed to be utterly void, he said :

"No deed can be pronounced, in a legal sense, utterly void which is valid as to some persons, but may be avoided at the

election of others.   A thing is void which is done against law
at the very time of doing it, and where no person is bound by
the act; but a thing is voidable which is done by a person who
ought not to have done it, but who nevertheless cannot avoid
it himself after it is done.   Bacon classes under the head of
acts which are absolutely void to all purposes the bond of a
*femme covert*, an infant, and a person *non compos mentis*,
after an office found and bonds given for the performance of
illegal acts.   He considers a fraudulent gift void as to some
persons only, and says it is good as to the donor, and void as
to creditors.   Whenever the act done takes effect as to some
purposes, and is void as to persons who have an interest in
impeaching it, the act is not a nullity, and therefore, in a
legal sense, is not utterly void, but merely voidable.   An-
other test of a void act or deed is that every stranger may
take advantage of it, but not of a voidable one.   Again, a
thing may be void in several degrees :   (1)   Void as if never
done, to all purposes, so as all persons may take advantage
thereof; (2) void to some purposes only; (3) so void by
operation of law that he that will  have the benefit of it, may
make it good.''

This same rule and distinction between void and voidable
acts was laid down in *Fletcher* v. *Stone*, 3 Pick. 250.   The
court there, in order to more accurately arrive at a meaning,
drew a distinction between acts which are *mala in se* and those
which are only *mala prohibita*, declaring the former absolutely
void, and that no right or claim can be derived from such acts;
but that acts which are only *mala prohibita* are either void or
voidable according to  the nature and effects of the act pro-
hibited.

Among other things, the court said :   ''If it concerns the
public good, it is generally to be considered void; but if it is
prohibited for the purpose of  securing  the  private  rights  of
the parties interested, it is only voidable.   Where the  public
interest is not concerned, it is sufficient to allow the party who
may be prejudiced by an unlawful sale or contract to avoid it.
It is on this ground that a mortgage  or  assurance  given  on a

usurious consideration has been held only voidable, notwithstanding the strong words of the statute."

The Supreme Court of the United States, in *Ewell* v. *Daggs*, 108 U. S. 143, 2 Sup. Ct. 408, had occasion to consider a point analogous to this under investigation. It arose in an action brought on a promissory note, the defense being usury. The Texas statute in force when the note was executed made all contracts in writing stipulating for a greater rate of interest than 12 per cent. "void and of no effect" for the rate of interest, etc. The argument advanced was that the contract was void as to the entire interest. But it was held that the word "void and of no effect" were used in the sense of "voidable" merely,—that is, capable of being avoided,—and that they did not mean that the transaction was an absolute nullity, as though it never had existed; not capable of giving rise to any rights or obligations under any circumstances. "All that can be meant by the term," Justice Matthews said, "according to any legal usage, is that a court of law will not lend its aid to enforce the performance of a contract which appears to have been entered into by both the contracting parties for the express purpose of carrying into effect that which is prohibited by the law of the land. (Broom, Leg. Max.)"

That great court also recognized the distinction between *mala in se* and *mala prohibita*, saying: "A distinction is made between acts which are *mala in se*, which are generally regarded as absolutely void, in the sense that no right or claim can be derived from them; and acts which are *mala prohibita*, which are void or voidable, according to the nature and effect of the act prohibited. (*Fletcher* v. *Stone*, 3 Pick. 250.) It was accordingly held in Massachusetts that a mortgage or assurance given on a usurious consideration was only voidable, notwithstanding the strong words of the statute. (*Green* v. *Kemp*, 13 Mass. 515.) And in such cases the advance of the money, although the contract is illegal for usury, is a meritorious consideration, sufficient to support a subsequent liability or promise, when the positive bar of the statute has been removed."

The statute was looked upon as, in effect, enabling the party sued to resist a recovery against him of the interest which he had agreed to pay; the court saying that the statute was penal in its nature, "inflicting upon the lender a loss and forfeiture to that extent."

These decisions rest upon firm ground. They decide that if there is anything immoral in the contract itself, or even in some instances where it is expressly prohibited by statute, that there can be no legal remedy; but they do not decide that contracts founded on meritorious considerations, although made by a foreign corporation in contravention of the statutes, are nullities. And it appears to us from the tenor of the statute of Montana that the legislature meant, not to declare such a contract as we have before us absolutely void, but to concede the validity of such a contract unless the party who has the right to treat it as void renders it practically a nullity by invoking the provisions of the statute to prohibit its enforcement. This opinion is strengthened by observation of the forfeiture clause of $10 a day for every day that the corporation neglects to file the necessary certificates. We do not believe that it was intended to not only impose that severe penalty, but likewise to sanction defenses which permit its just debtors to take the money of a foreign corporation, and treat the contract of loan as if never made at all. The words of forfeiture to the state seem to negative the idea that the contract is to be so treated. And what we have said of the word "void" in the statute applies as well to to the word "invalid." They are used interchangeably, and, though used together, no force is added to "void" by the use of "invalid."

The conclusion we therefore reach is that the defendant in this case could plead the statute, and defeat the action upon his note and mortgage so long, at least, as plaintiff delayed complying with the statutes cited applicable to foreign corporations, unless a valid curative statute has been passed, or unless the plaintiff could successfully invoke the doctrine of estoppel against defendant, upon the principle that defendant, having borrowed the money of it as a foreign corporation, and

having recognized its legal existence and status within the state to a degree to benefit himself, ought not to be heard to say that the corporation had not done those acts which it should have done before it could undertake the very act which it did do at his request, and for his great advantage. This point we shall not discuss, but it has not been overlooked in our consideration of this case, and we expressly reserve an opinion upon it.

Passing, then, the question of estoppel, we proceed to examine the acts of the legislature passed subsequent to chapter 24, heretofore referred to, to ascertain whether, under any such statutes, plaintiff has a remedy, and can recover.

The Civil Code of 1895 was approved February 19th of that year. As printed, sections 1034, 1035, thereof provide as follows :

Section 1034 : ''Any foreign corporation that has heretofore engaged in business, performed acts or made contracts in this state, may, within ninety days from the date this act goes into effect comply with the provisions hereof, and thereupon all its acts and contracts done and made before this act goes into effect shall be valid and enforceable, any statute of this state heretofore enacted to the contrary notwithstanding.''

Section 1035 : ''Foreign life insurance companies, not on the assessment plan, are hereby declared to be embraced within the provisions of this act.''

It appears that the bill containing said sections 1034 and 1035 was introduced February 1, 1895, and a substitute for the original bill was introduced February 7, 1895. They were enacted as sections 1 and 2 of ''An act to amend Title XI of Part IV, of the First Division of the Civil Code of Montana, entitled 'Foreign Corporations.' '' On March 5, 1895, the bill passed, and was approved by the governor on March 19, 1895, or one month after the date of the approval of the Civil Code. The contention of the appellant is that the bill containing said sections 1034 and 1035 was, under the facts stated, not a bill to amend a law, but simply a bill to amend a bill, and that it follows that, the bill being a bill to amend

something not in existence, it was, therefore, nugatory and void.

But we cannot agree with the learned counsel for the appellant upon this point. Section 19, Article 5, of the Constitution provides that "no law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose." It is a matter of common knowledge that bills pending in a legislature are amended frequently in the course of their process of enactment, and we cannot believe that a statute amending a bill which subsequently has become a law is a violation of any constitutional provision. We are cited to Section 12, Article 7 of the Constitution, which provides that every bill passed shall, before it becomes a law, be presented to the Governor. But there is nothing in this language which prevents the separate amending of a bill which subsequently becomes a law. Several of the authorities cited by the appellant are to the effect that an amendment to an act which has been repealed is nugatory; but that is a very different proposition from the one immediately before us, while no case cited conflicts with our opinion.

Holding, therefore, that sections 1034 and 1035 are in force as amendments to the Civil Code, by Section 5182, Political Code, they went into force and effect July 1, 1895.

It is next urged that, even if said sections are in force, they violate section 11, Article 15, of the Constitution of the state, and are void.

Section 11, Article 15, of the Constitution, is as follows: "No foreign corporation shall do any business in this state without having one or more known places of business, and an authorized agent or agents in the same, upon whom process may be served. And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state, any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

Appellant, in urging that the statutes referred to allow a foreign corporation greater rights or privileges than those possessed by a like domestic corporation, assumed that it might be held that chapter 29, Compiled Statutes, and sections 680-683, Civil Code, applied to life insurance corporations. But as we have accepted the contention of appellant that chapter 24 is applicable to respondent, and not chapter 29, it is needless to dwell on this point. Besides, if chapter 29 embraces foreign life insurance companies, and they are not embraced within chapter 24, the contract is valid without relation to section 1034 at all, for the provisions of chapter 29 do not declare it invalid, but simply impose a penalty.

We are next brought to another important point made by appellant. He assails the constitutionality of said sections 1034 and 1035 cn the ground that they violate section 13, Article 15, of the Constitution, which is as follows :

"The Legislative Assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal subdivision of the state a new liability in respect to transactions or considerations already passed."

The argument is that, if section 1034 is valid, any unlawful act or contract of the plaintiff performed or entered into before August 13, 1895, is made lawful and valid; that the statute of frauds, as applied to plaintiff, is repealed, and that any crimes or invasion of vested rights are made legal, and *ultra vires* acts are confirmed.

Again we are constrained to disagree with the argument of the appellant. Section 1034 validates and renders enforceable acts and contracts of foreign corporations done and made before the amendatory act went into effect, notwithstanding any statute theretofore enacted to the contrary. Section 1034 is properly found in Title 11 of the Civil Code, which pertains to foreign corporations, requiring them to file copies of their charter and reports and other matters pertaining to the conditions imposed by the legislature upon such foreign corpora-

tions before they have the right to transact business within this state. It was the purpose of the statute just cited to effectuate and make valid and enforceable acts and contracts made by such foreign corporations where perchance they had done business without filing the statement and certificate required by previous statutes cited. To this purpose it will be limited, because its relation is solely to the act of which it is amendatory.

The point particularly pressed is that the statutes involved are retrospective in their operation, and for the benefit of corporations. But, in our opinion, section 1034 is not a retrospective law in the sense in which the term is used in the constitutional clause quoted. It is not an inhibition against general retrospective legislation enabling corporations which have made contracts without first observing certain legal formalities to enforce such contracts. It does not prevent the enactment of valid curative statutes. Under its terms no special retrospective laws can be passed for the benefit of a corporation, nor can any law be enacted making a contract or obligation where none had existed; but, if a contract has been entered into between a citizen of the state and a foreign corporation, and the citizen has been possessed of a legal right to avoid it because of a defect of proceeding on the part of the corporation, which right, in violation of good conscience, the citizen unjustly insists upon, it never was the design of the constitution to protect such a right by taking away from the legislature the power to pass a healing act which deprives the citizen of that right. Whatever the policy of the state may be in relation to the enforcement of such contracts by the corporation, the Constitution never prohibited laws which, according to Thompson on Corporations (section 7963), are calculated to prevent persons from repudiating the honest engagements into which they have entered, provided, of course, vested rights are not divested, or the obligation of contracts are not impaired.

The legislature doubtless realized at the time of the passage of section 1034 that there had been many contracts entered

into between citizens of the state and foreign corporations, where such corporations had omitted to take the necessary steps to authorize them to do business within the state. For the purpose, therefore, of validating such contracts, and of enabling them to be enforced, the statutes referred to were enacted. We scarcely think it necessary to reaffirm the familiar doctrine that, unless a vested right is interfered with, or unless the obligation of a contract is impaired, a legislature may pass a law retrospective in its operation, unless the Constitution of the state inhibits such legislation. But we have already seen there is nothing in the Constitution of Montana against such legislation as that under examination, and the simple inquiry is, therefore, do these statutes take away vested rights or impair contracts?

Cooley, Const. Lim. p. 454, says: "But there are many cases in which by existing laws, defenses based upon mere formalities are allowed in suits upon contracts, or in respect to legal proceedings, in some of which a regard to substantial justice would warrant the legislature in interfering to take away the defense if it possesses the power to do so. In regard to these cases, we think investigation of the authorities will show that a party has no vested rights in a defense based upon an informality not affecting his substantial equities."

And again, on page 457, he continues: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity of which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode, or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."

In *U. S. Mortgage Co.* v. *Gross*, 93 Ill. 483, the effect of a curative statute, somewhat similar to section 1034, was discussed. The court decided that Lombard, who had borrowed the money, and who had attempted to make a valid contract of

mortgage to secure its payment, was, if not legally, at least in justice and good conscience, bound, and that it was clear that the mortgage could be validated by a subsequent statute, so far as it pertained to him. In that case, too, the rights of third persons intervened, which it was claimed could not be affected by such legislation. We mention this phase of that case as bearing upon the relation of the Denver & Helena Building company to the respondent in this suit. The Illinois court followed the distinction laid down by Judge Cooley on pages 378 and 379 in his work on Constitutional Limitations, and restricted the operation of the rule to the parties to the original contract, and to such other persons as may have succeeded to their rights, with no greater equities. Here the Denver & Helena Building company expressly assumed and agreed to pay the principal of the note to the plaintiff corporation, and bought with full knowledge of the mortgage. Under such circumstances the court must recognize the rights of the plaintiff corporation as best, and as entitled to the first protection which the law usually accords in such cases.

This Illinois decision last referred to was affirmed by the Supreme Court of the United States, reported in 108 U. S. 477, 2 Sup. Ct. 940. Justice Harlan, in speaking of the statute of Illinois which forbade a foreign corporation from taking a mortgage upon real property in that state to secure a loan of money, decided that when the legislature removed such inhibition, as well by statute as by the public policy of the state, upon the execution of a contract of mortgage it could not be said that such legislation, although retrospective in its operation, impaired the obligation of a contract.

Continuing, he said: "It rather enables the parties to enforce the contract which they intended to make. It is, in effect, a legislative declaration that the mortgagor shall not, in a suit to enforce the lien given by the mortgage, shield himself behind any statutory prohibition or public policy which prevented the mortgagee, at the date of the mortgage, from taking the title which was intended to be passed as security for the mortgage debt. We repeat here what was said in

*Satterlee* v. *Matthewson*, 2 Pet. 380, and in substance in *Watson* v. *Mercer*, 8 Pet. 88, that "it is not easy to perceive how a law which gives validity to a void contract can be said to impair the obligation of that contract."

The Supreme Court was again called upon to pass upon rights taken away by curative statutes in *Ewell* v. *Daggs*, heretofore cited, and treated a constitutional repeal of a usury law upon a contract previously made in the following language: "Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is that the right of a defendant to avoid his contract is given to him by statute for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains in *fieri*, and not realized by having passed into a complete transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere to the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court."

To enumerate more cases where the principle that a retroactive law conferring a legal remedy divests no rights, where a right to recover on the contract sued on would have been possessed if there had been no legislative interdiction, would be useless. The reasoning of Judge Cooley has been so often applied that to quote the language of many more decisions would be but needless prolixity. The doctrine is well laid down in *Hess* v. *Werts*, 4 Serg. & R. 356; Wade, Retro. Laws, § 250; Suth. St. Const. § 483.

This curative statute impaired no contract. It only set aside an impediment to a contract honestly made by defendant with the plaintiff. In thus removing the impediment it was to that extent retroactive. As said, if the act destroys a right pre-

viously attached, it is contrary to constitutional limitations; but we should not lose sight of the difference between a law which does divest a right, yet removes a disability. The statute under consideration well exemplifies this distinction. It works no wrong or injustice against Winne. His rights are not interfered with. The mortgage contract is not violated or disturbed to any extent whatsoever. The statute merely takes from the mortgage contract the taint which the policy of the law imposed, and gives to the plaintiff a right to recover on the contract—a right which it would have possessed if there had been no legislative interposition. *Bleakney* v. *Bank*, 17 Serg. & R. 64.

Indeed, upon the authority of our own decision in *State* v. *Dickerman*, 16 Mont. 278, 40 Pac. 698, section 1034 is not a violation of the Constitution of the state, and, as appropriate to the question before us, we quote the following language of Chief Justice Pemberton :

"We have already held that a liability existed on the part of the district to refund the money advanced by relator. This liability existed prior to the passage of the law under discussion. The law imposed no new liability or burden upon the district. The law was intended to give a remedy, if remedy were wanting for its enactment. We think the legislature had the power to enact the law, and that the law does not conflict with the Constitution of the state."

It appearing that respondent filed the papers and complied substantially with the law within 90 days after the codes went into effect, its acts and contract had and made with appellant Winne before the codes took effect are valid and enforceable, notwithstanding any statute which provided that a foreign corporation should file a statement and certificate before doing business, or the contract as to them should be void and invalid.

Several minor errors are assigned, but we find none of them are well taken. The judgment is affirmed.

*Affirmed.*

Pemberton, C. J., and Buck, J., concur.