Clarke, Rec., *v.* Darr.

---

## CLARKE, RECEIVER, *v.* DARR ET AL.

[No. 19,124. Filed May 28, 1901.]

BUILDING AND LOAN ASSOCIATIONS.—*Foreign Associations.—Failure to Comply with State Laws as to Admission.—Receivers.—Statutes. —Constitutional Law.*—The provision of §10 of the act of 1897 (Acts 1897, p. 284), that where a foreign building and loan association doing business in this State has become insolvent and passed into the hands of a receiver, who is engaged in winding up its affairs, the failure of such association to comply with the laws of the State respecting its admission to transact business within the State shall not affect or defeat the right of such receiver to institute and maintain any suit necessary to the winding up of the affairs of such association, is clearly relevant to the general subject of building and loan associations designated in the title of the act, and is properly connected with such subject within the meaning of the Constitution. *pp. 695-700.*

SAME.—*Foreign Associations.—Receivers.—Action.—Statutes.—Constitutional Law.*—The provision of the act of 1897 (Acts 1897, p. 284), giving receivers of foreign building and loan associations that had not complied with the laws of this State relative to their admission to do business the power to bring suits necessary to the winding up of such associations, when such associations as going concerns could not maintain actions for the enforcement of their contracts, is not invalid as impairing the obligation of contracts, or destroying vested rights. *pp. 700-702.*

From the Elkhart Circuit Court. *Reversed.*

*Erdall & Swansen, W. Roose* and *G. D. Lint,* for appellant.

*Lou W. Vail,* for appellees.

Clarke, Rec., *v.* Darr.

JORDAN, J.—This action was instituted by appellant, Clarke, receiver of the American Savings & Loan Association, formerly doing business under the name of the American Building & Loan Association, a corporation organized in April, 1887, under the laws of the state of Minnesota as a building and loan association. By this suit appellant as such receiver sued to recover judgment upon a bond or written obligation, and to foreclose a mortgage upon certain real estate situated in the city of Goshen, Elkhart county, Indiana, said bond and mortgage both being executed by the appellee Charles L. Darr to said building and loan association on the 1st day of August, 1890, the bond being for money loaned or advanced to him by the association, to secure which the mortgage in suit was executed. It appears that prior to the commencement of this action said association had become insolvent, and appellant was duly appointed receiver to wind up its affairs and collect its assets. Appellees appeared to the action, and Charles L. Darr filed a verified plea in abatement whereby he sought to abate the action. Appellant's demurrer to this plea was overruled, and, upon his refusal to plead further, judgment was rendered in favor of appellees, to the effect that appellant take nothing by his complaint, and that they recover their costs. The only error assigned is that the court erred in overruling this demurrer.

The plea in question by way of abatement averred that the American Building & Loan Association was a foreign corporation, organized under the laws of the state of Minnesota, and at the time of the execution of the bond and mortgage in suit it was doing business in the State of Indiana, and that said contracts were entered into by it through William H. Vesey, Charles W. Miller, Merrill E. Wilson, and Charles Wehmeyer, who were then acting as its agents in and for the county of Elkhart, State of Indiana; that said parties as agents for the said association had not at the time of entering into said contracts, nor have they, or either of

them, or any other person, at any time since the execution thereof, deposited or filed in the clerk's office of said Elkhart county any power of attorney, appointment, or authority under or by which they, or either of them, acted as such agents; that said corporation is now insolvent and in the hands of a receiver, and has not, prior to the commencement of this action, complied with the provisions of §§3022, 3023, 3030 R. S. 1881. Sections 3022, 3023, *supra,* referred to in the above plea of abatement, were a part of the revised statutes of 1852, and have been in force in this State since 1853, and are numbered §§3453, 3454 Burns 1894. Section 3461 Burns 1894, §3030 R. S. 1881, mentioned in the plea of abatement, is section two of an act approved March 15, 1879 (Acts 1879, p. 145), which relates to the transfer of actions by a foreign corporation from any court in this State to the federal courts. This latter section, under the facts in this case, is not applicable, and must have been substituted by the pleader through inadvertence, for §3456 Burns 1894, §3025 R. S. 1881. Section 3022, *supra,* requires agents of foreign corporations, before entering upon the duties of their agency in this State, to deposit in the clerk's office of the county where they propose to transact business the appointment or authority under, or by virtue of which, they act as agents. Section 3023, *supra,* requires said agents to procure from such foreign corporation and to file with the clerk of the circuit court of the county wherein they propose to do business before commencing their duties a duly authenticated order or resolution of its board of directors or managers, authorizing citizens or residents of this State having a claim or demand against such corporation, arising out of any transaction in this State with such agents, to sue for and maintain an action in respect to the same, etc., and further authorizing service of process in such action on such agent to be valid service on such corporation, etc. Section 3025, being section four of the act as originally enacted, provides that

"Such foreign corporations shall not enforce, in any court of this State, any contract made by their agents or by persons assuming to act as their agents, before a compliance by such agents or persons acting as such with the provisions of sections one and two of this act." (§§3022, 3023.)

Appellant virtually concedes that the agents mentioned in the plea of abatement had not, at the time they transacted the business in question with appellee in respect to loaning the money and the execution of the bond and mortgage, nor did they at any time subsequent thereto, comply with the provisions of said §§3022, 3023, *supra*, but he contends that he is authorized to maintain this action by virtue of section ten of an act of the legislature of this State, approved March 8, 1897 (Acts 1897, p. 284), which section reads as follows: "That where a foreign building and loan association doing business within this State has become insolvent, and its affairs are being wound up by a receiver, the failure of such association to have complied with the laws of the State representing its admission to do business therein, shall not affect the right of such receiver to bring any suit necessary to wind up the affairs of such association."

Appellee, however, assails the validity of this act upon the grounds that it was enacted in violation of section 19, article 4 of the State Constitution, which provides that "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title", etc. The title of the above act of 1897 is as follows: "An act concerning building and loan associations; prescribing the duties of certain officers therein named; providing penalties for the violation of the provisions of this act; fixing the time when the same shall take effect, and repealing all laws and parts of laws in conflict therewith; fixing the time for the taking effect thereof."

The first section of the statute in question provides "That every association heretofore or hereafter incorporated under any law of this State providing for the incorporation of

building and loan fund and savings associations, and every association heretofore or hereafter incorporated for the purpose of raising money to be loaned or advanced among its members, shall be known in this act as a building and loan association," etc. Section two makes it unlawful for any building and loan association doing business in this State to charge or collect from any of its members, on the stock or shares of stock therein, any money other than membership fees, loan fees, dues on stock, premium, interest, fines, and forfeitures, etc. Other sections of the act relate to the matters and affairs of building and loan associations. Section eight provides for the going into liquidation of building and loan associations organized under the laws of this State, and further provides that any such association which may go into liquidation under the provisions of the act shall not be subject to any of the provisions of the preceding sections, but its affairs shall be controlled and regulated by the laws in force prior to the passage of the act until the winding up of its affairs. Section nine, among other things, legalizes contracts previously made between a borrower and any such association for the payment of any premiums with or without any bidding, and further provides that no premiums previously contracted for without bidding, or to be contracted for, under this section, shall be deemed usurious.

Counsel for appellees propounds this question: "Is the title, 'An act concerning building and loan associations', a broad enough title to cover a statute relating to such associations organized under the laws of sister states?" It is asserted that a going corporation organized under the laws of this State and the receiver of an insolvent foreign corporation constitute two subjects and that neither is matter properly connected with the other. Counsel contend that the title of the act indicated that the law to be enacted was intended to apply only to domestic building and loan associations which were going concerns within this State, and not to the winding up of the affairs by a receiver of a for-

eign insolvent association which had been doing business within the State, and the insistence is further advanced that such a matter can not be considered as one properly connected with the subject designated by the title. The provision of our Constitution here involved has been repeatedly considered by this court, and the purpose and meaning thereof seem to be settled upon principles which give it a somewhat general and liberal application. As affirmed in *Hingle* v. *State*, 24 Ind. 28: "It authorizes one subject, and any number of matters, provided they have any natural or logical connection with each other in legislation. The words 'subject' and 'matter' are often used as synonymous. Indeed, in the sense in which they are employed in the Constitution, they are as nearly so as it is possible for two English words to be, and both are used simply to avoid repetition. The only difference between them is created by the offices which they are respectively made to perform in the clause in question. * * * Now it is quite evident that the word 'subject' is here used to indicate the chief thing about which legislation is had, and 'matters' the things which are secondary, subordinate or incidental."

The provision in question does not require that all of the matters relating to, or connected with the principal subject, shall be expressed in the title, but only the general subject of the legislation. If such subject is expressed in the title, then any number of provisions germane to the general subject may legitimately be embraced or embodied in the statute enacted. If the title of an act covers a general subject, it is sufficient, and is not open to objections, because it does not proceed further and mention all of the germane matters or details intended to be embraced in and provided for by the act itself. *Bright* v. *McCullough*, 27 Ind. 223; *State, ex rel.*, v. *Kolsem*, 130 Ind. 434, and cases cited, 14 L. R. A. 566; *Central Union Tel. Co.* v. *Fehring*, 146 Ind. 189; *Maule Coal Co.* v. *Partenheimer*, 155 Ind. 100.

The words "An act concerning building and loan as-

sociations" which constitute the general title of the act in dispute, certainly express but a single subject, namely, building and loan associations. A title of an act so constituted is quite comprehensive, and under it any provisions relevant or germane to such associations, either domestic or foreign, might be properly enacted. The title in controversy does not profess to limit the subject so as to include only matters relating to such associations as were organized under the laws of this State, but it is broad enough to include all over which the legislature in any manner had the right or power to legislate, regardless of their domicils. In *Maule Coal Co.* v. *Partenheimer*, 155 Ind. 100, on page 106 of the opinion, we said: "To express the subject of a statute in the title, in compliance with the requirement of the Constitution, no particular form or terms are exacted, nor is it essential that such subject be expressed with precision. The title will sufficiently conform to the command of the Constitution if it be so framed and worded as fairly to apprise the legislators, and the public in general, of the subject-matter of the legislation, so as reasonably to lead to an inquiry into the body of the bill. The constitutional requirement may be interpreted to mean that the act and its title must correspond, not literally but substantially, and such correspondence is to be determined in view of the subject-matter to which the legislation relates." Citing authorities.

We are constrained to hold, under the authorities cited, that the title of the act of 1897 is broad enough to embrace section ten of said act, and that it does not necessarily indicate that the legislation proposed is to be limited entirely to domestic building and loan associations. It follows, therefore, that appellees' objections to the section, for the reasons urged in this respect, are not sustained.

The cases of *Igoe* v. *State,* 14 Ind. 239, and *Grubbs* v. *State,* 24 Ind. 295, relied upon by counsel for appellees, are readily distinguishable from the case at bar. In both cases provisions of the same act were involved, the title of which

was "An act for the incorporation of insurance companies, defining their powers and prescribing their duties." As the legislature had no power to provide for the incorporation of insurance companies in sister states, the title necessarily indicated that the proposed legislation was intended to be limited to domestic insurance companies., It will be seen that the section in question, in effect, provides that where a foreign building and loan association doing business in this State has become insolvent and passed into the hands of a receiver who is engaged in, winding up its affairs, that the failure of such association to comply with our laws in respect to its right or admission to transact business within the State shall not affect or defeat the right of such receiver to institute and maintain any suit necessary to the winding up of the affairs of such association. This provision, we think, is clearly relevant or germane to the general subject of building and loan associations designated in the title, and, hence, is properly connected with such subject within the meaning of our Constitution. *Bank* v. *City of New Albany,* 11 Ind. 139; *Reed* v. *State,* 12 Ind. 641; *State* v. *Adamson,* 14 Ind. 296; *Brandon* v. *State,* 16 Ind. 197; *Robinson* v. *Skipworth,* 23 Ind. 311; *Shipley* v. *City of Terre Haute,* 74 Ind. 297; *Nitche* v. *Earle,* 117 Ind. 270; *State, ex rel.,* v. *Roby,* 142 Ind. 168, 51 Am. St. 174, 33 L. R. A. 213; *Shea* v. *City of Muncie,* 148 Ind. 14; *Pittsburgh, etc., R. Co.* v. *Montgomery,* 152 Ind. 1, 71 Am. St. 301.

The purpose of the legislature in the enactment of said section was not to confer any new or additional powers upon receivers of insolvent corporations, either foreign or domestic, but the object was solely to remove any impediment or barrier in the way of a receiver of such foreign associations, where the same arose out of or was due to its failure when it was a going concern to comply with the laws of this State in relation to its admission and right to do business therein, and which impediment or obstacle was in the way of enforcing its contracts, and, unless removed, would prevent the

receiver· from winding .up its ·affairs and collecting its assets arising .out of the business contracted by such association in this State.·

ᵢIt is next .insisted that the provision ·of the section in dispute is so retrospective as to impair the obligation of· a contract, or, in other words, that it serves to destroy or disturb the ·existing vested right of the appellee to. abate the action, and· thereby defeat the enforcement- of the contracts involved in this suit.  It· is contended that under the law as it stood prior to this enactment, that the power of either the· association or the receiver to enforce these contracts had no existence.  That·the right of action was as dead as though such contracts had been fully·paid·or barred by the statute of limitations, and-that to restore such right is.to·create a new liability, which, it is asserted,.is beyond the power of the legislature.  We are not impressed with this contention and argument of appellee.· It· is well settled by numerous authorities that he had no vested .rights in being permitted to oppose the action, by way of a plea in abatement, for the failure of the association to comply with the provision of the laws to which we· have heretofore ·referred.  It was within the power of the legislature, under our Constitution, to interpose and· remedy or cure the results due to the · failure of· the association to ·comply with such laws, and in so doing· it would in no manner violate the· Constitution by impairing the obligations of a contract, or by disturbing, within the meaning of that instrument, any vested right of appellee.  The right of action upon the contract in question was not dead, or as completely destroyed as appellee insists, as it would have been had its enforcement been completely and fully barred by the statute of limitations.  ·The remedy to enforce the contract was simply suspended, under the provisions of §3456 Burns 1894, §3025 R. S. 1881, until there was a compliance with the statute.  *Wood, etc., Co.* v. *Caldwell,* 54 Ind. 270, 23 Am. Rep. 641 ; *Domestic, etc., Co.* v. *Hatfield,* 58 Ind. 187 ; *Daly* v. *National Life Ins. Co.,*

64 Ind. 1; *American Ins. Co.* v. *Wellman,* 69 Ind. 413; *Phenix Ins. Co.* v. *Pennsylvania R.. Co.,* 134 Ind. 215, 20 L. R. A. 405.

It is true that where a person has satisfied a demand, it can not be revived against him by the legislature, and where he has been released from a demand by means of the operation of the statute of limitations he is equally protected, but a party can not be said to have a vested right in a defense based upon an informality which does not affect his substantial equities or rights. Cooley on Const. Lim. 454.

In fact he has no such rights in the law generally, nor in legal remedies afforded, and therefore changes made therein by the legislative department ·do not come within the constitutional prohibition, unless they are of such a nature or character as materially to affect or impair contractual or vested rights. Where laws merely afford means for a more efficient enforcement of a contract, they can not be said to impair· it, and are not invalid for that reason. *Bryson* v. *McCreary,* 102 Ind. 1; *Johnson* v. *Board,.etc.,* 107 Ind. 15; *Burget* v. *Merritt,* 155 Ind. 143; *Andrews* v. *Russell,* 7 Blackf. 474; *Pierce* v. *Mills,* 21 Ind.. 27·; *Mutual Benefit Ins. Co.* v. *Winne,* 20 Mont.. 20, 49 Pac. 446; *Ewell* v. *Daggs,* 108 U. S. 143, 2 Sup. Ct. 408, 27 L..Ed: 682; *Bleakney* v. *Farmers, etc., Bank,* 17 Sarg.· & R. (Pa.) 64, 17 Am. Dec. 635. ·

In *Mutual Benefit Life Ins. Co.* v. *Winne,, supra,* a statute of Montana provided, in effect,· that all acts and con-tracts made by a foreign corporation before it had filed a certificate required by the laws of that state should be void as to such corporation. The legislature of that state passed an act relieving such contracts of the invalidity imposed by the former act and provided that they should be valid and enforceable. It was held in that appeal that the purpose of the statute was merely to legalize· and .render enforceable contracts of a foreign corporation, which,. as the· court held, were avoidable only by reason of the failure of such corporation to file a statement ·and certificate ·as by the law was

required; that the statute was of a healing or curative character; and did not interfere with any vested rights or impair the obligations of a contract.

In the case of *Burget* v. *Merritt*, 155 Ind. 143, a question similar to the one presented by appellee was, after a very exhaustive review and consideration of the authorities, decided adversely to his contention. This court, in that case, on p. 148 of the opinion said: "The act does not impair any contract of appellants. In its essential nature, the act is the same as one that would take away the defense of non-compliance with the statute admitting foreign corporations to do business in this State, which appellants might otherwise have interposed in an action by a foreign corporation to recover on a contract made here without license. It is a contradiction in terms to say that the taking away of the means by which a contract may be repudiated or ignored and the providing of a remedy to enforce the contract as the parties made it is an impairment of the obligation of the contract. 'A party,' says Story, 'has no vested right in a rule of law which would give him an inequitable advantage over another; and such rule may therefore be repealed and the advantage thereby taken away. To illustrate this remark: If by law a conveyance should be declared invalid if it wanted the formality of a seal; or a note void if usurious interest was promised by it; or if in any other case, on grounds of public policy, a party should be permitted to avoid his contract entered into intelligently and without fraud, there would be no sound reason for permitting him to claim the protection of the Constitution, if afterwards, on a different view of public policy, the legislature should change the rule, and give effect to his conveyance, note, or other contract, exactly according to the original intention. Such infirmities in contracts and conveyances are often cured in this manner, and with entire justice; and the same may also be done with defects in legal proceedings occasioned by mere irregularity.' 2 Story on Const. (5th ed.), 703. And so says the courts."

Without further consideration we conclude that none of the objections urged by appellees to the section in question can be sustained. The plea in abatement is, therefore, insufficient, and the court erred in not sustaining appellant's demurrer thereto, for which error the judgment is reversed, and the cause remanded to the lower court, with instructions to sustain the demurrer to appellees' plea in abatement.

Baker, J., did not participate in this decision.