THE SCHOOL TOWN OF WINAMAC v. HESS ET AL.

[No. 18,307.   Filed April 22, 1898.   Rehearing denied Oct. 11, 1898.]

MUNICIPAL CORPORATIONS. — Indebtedness.— Limitation.— Constitutional Law.—A contract entered into for the construction of a schoolhouse is not rendered void as an entirety by reason of the indebtedness incurred in the construction thereof exceeding the constitutional limitation, and the bond given by the contractors for the performance of the building contract is not rendered void by reason of the fact that the building contract created a debt in excess of two per cent. of the assessed value of the taxable property of the municipal corporation.   pp. 229-241.

CONTRACTS. — School Buildings. — Construction.— Abandonment of Contract.—Where after the partial construction of a school building an injunction was awarded enjoining the issuance of bonds to cover the expense of the completion of such building, and the contractors abandoned the work, and the school trustees completed the work, using material left on the ground by such contractors, as provided by the contract, the school town is not liable to such contractors for the value of such material, where the cost of completing the building, including the amount paid to such contractors, exceeded the contract price.   p. 241.

From the Marshall Circuit Court.   Reversed.

B. Borders, for appellant.

Wartman & Miller, J. D. McLaren and Charles P. Drummond, for appellees.

McCABE, J.—The appellant sued the appellees Hess and Myers as principals, and Gilmore and Corbin as sureties, on a bond executed by them to appellant on May 26, 1892, conditioned that Hess and Myers should, as contractors, construct a school building in the town of Winamac for $16,896.60, in all respects according to and in compliance with the terms, stipulations, and specifications of a contract executed by them on the same day to appellant. The defendants Hess and Myers, filed a cross-complaint, seeking to recover a judgment against the plaintiff. A trial of the issues resulted in a special finding of

the facts, upon which the court stated conclusions of law favorable to the appellees, upon which the court rendered judgment, in effect, that the plaintiff take nothing by its suit, and that the defendants, Hess and Myers, recover judgment against the plaintiff on their cross-complaint for $1,182.27.

The substance of the facts found is that in March, 1892, the only schoolhouse in Winamac was destroyed by fire, and it became necessary to construct a new one to provide common schools for the 400 children of school age residing in said town. The town owned a suitable tract of ground within said town for such a building, and the school trustees procured plans and specifications for a school building of suitable size at a probable cost of $19,000.00. The school town then asked the town to issue and sell bonds to the amount of $15,000.00, and turn the proceeds over to the school town, to be used in the proposed building. The proper steps were taken, and the order made for the issue of such bonds in April, 1892; and on May 26, 1892, appellant and appellees Hess and Myers, entered into a written contract, by which said appellees bound themselves to furnish the material and construct the building on said piece of ground according to the plans and specifications, for which appellant was to pay them $16,896.60. This written contract is set out in full in the special findings. On the same day the contractors as principals, and appellees, Gilmore and Corbin as sureties, executed to appellant a bond in the penalty of $10,000.00, conditioned for the faithful performance of the building contract. This bond, also, is set out in full in the findings. Among other things, it was stipulated in the building contract that the contractors should begin work at once, and should complete said building on or before November 1, 1892, and if they failed to

prosecute the work with diligence the appellant might terminate the contract, take charge of and complete the building, and should the cost of so completing the building exceed the amount due the contractors at the contract price, the contractors should pay to appellant the difference. It was also stipulated therein that the contractors, among other things, should pay $10.00 per day for each day the building remained unfinished after the 1st day of November, 1892. The contractors began work at once, and continued at work until October 18, 1892, and then refused to proceed further with the work. The architect, as the contract authorized him to do, certified to the trustees of appellant that this was a sufficient excuse for the termination of the building contract. The trustees then notified the sureties upon the bond, as the contract authorized and required them to do, of the failure on the part of the contractors, and that if the work was not resumed, the appellant would terminate the contract, employ other workmen, and complete the building. The bondsmen refused to complete the work, and thereupon the employment of the appellees as contractors was terminated by the appellant, and it took charge of the work, and completed it according to the contract. This contract provided that appellant should pay the contractors at stated periods, as follows: At the end of each three weeks, or thereabouts, the architect should make an estimate and certify to the school board the amount of work completed, and thereupon the school town should pay to the said Myers and Hess the amount of said estimate, less fifteen per cent. thereof. It further provided that, in case of the termination of the contract by the appellant, it should take possession of any unused material on the premises, and thereafter the contractors

should not be entitled to any further payment until
the work should be wholly finished, and if thereupon
the unpaid balance of the contract price should ex-
ceed the expense incurred by appellant in finishing
the work, no further payment should be made to the
contractors, and in case such unpaid balance did ex-
ceed such expense, such excess should be paid to the
contractors by appellant; that while Myers and Hess
were at work upon said building, the architect from
time to time made estimates in writing of the work
and material furnished by them, delivered said es-
timates to appellant, and gave a copy thereof to said
Hess and Myers, and upon presentation of said copy
to appellant's trustees, they paid to Hess and Myers
the amount of each estimate, less ten per cent. there-
of, the dates and amounts of which estimates, and
time of payment thereof is as follows: The first es-
timate June 22, 1892, for $1,211.22, paid $1,090.10;
second, July 13, 1892, for $1,055.23, paid $947.71;
third, August 8, 1892, for $565.50, paid $508.95;
fourth, September 1, 1892, for $551.50, paid $496.35;
fifth, September 20, 1892, for $833.00, paid $749.70;
sixth, October 12, 1892, for $916.00, paid $824.40. Mak-
ing the total estimates $5,132.46, and the total pay-
ments $4,619.21. That after the board of trustees of
the civil town had ordered the issue and sale of the
$15,000.00 of bonds already mentioned, a taxpayer of
said town began suit in the circuit court of the county
to enjoin the issue and sale of said bonds, after the
order had been made but before their issue, on the
ground that the issue and sale of that amount of
bonds would exceed the constitutional limit of two
per cent. of the taxable property of said incorporated
town.    A perpetual injunction was awarded by the
circuit court, which judgment on appeal to this court
was affirmed. *Town of Winamac* v. *Huddletson,* 132

Ind. 217. That the assessed valuation of all the property within the town of Winamac for the year 1891 was $336,000.00. At the time of the contract there were bonds of said town outstanding and unpaid amounting to $2,700.00, the proceeds of which had gone into the school building previously destroyed by fire. And appellant, at said date of May 26, 1892, was further indebted upon school orders aggregating $149.54. The salary of its trustees for the year ending June 1, 1892, aggregating $90.00 was unpaid.

It had a contract with Joseph E. Mills by which it was to pay him for preparing plans and overseeing the work the sum of $700.00, to be paid, $200.00 when the contract was let, $200.00 when the brick walls were up, $200.00 when the building was plastered, and $100.00 when the building was complete. And neither the town of Winamac nor the school town was otherwise indebted. On the day of the execution of the contract and bond aforesaid, the school town of Winamac had on hands, cash belonging to its special school fund, for use in the construction of a public school building, the sum of $4,800.00. And after the decision of this court aforesaid, the school trustees of the appellant presented to the board of trustees of the civil town of Winamac a petition, in writing, asking said civil town trustees to issue and sell bonds to the amount of $5,000.00 to raise funds with which to complete said school building, and, pursuant to said petition, on July 6, 1892, they entered an order to sell bonds amounting to said sum of $5,000.00. Afterwards, on August 22, 1892, said bonds were duly issued and sold, and the proceeds thereof, $5,000.00, in cash, were paid over to the school trustees of appellant, to be used in defraying the expense of the erection of said school building. After the execution of said building contract the appellant received from the tax levied

for special school purposes the following sums: On June 10, 1892, from the county treasurer, $683.78; on December 29, 1892, from the same source, $487.21; on June 9, 1893, from the same source, $914.96; on July 6, 1893, from the town treasurer, $700.00; on December 21, 1893, from the county treasurer, $596.38.

That from time to time during the year 1893, beginning with March 8, 1893, and ending December 12, 1893, the school trustees issued orders against the special school fund of the school town of Winamac, payable to various persons therein named, and sold said orders for their face value in cash, aggregating $9,700.00. And in January, 1893, the town of Winamac had a surplus in its treasury of $1,000.00, which, upon request of the school trustees, was loaned to appellant for use in said building. All of said funds were placed in the special school fund of said school town of Winamac, said fund being made up of the following items, to wit:

| | |
|---|---:|
| Cash in special school May 26, 1892 | $ 4,800.00 |
| Total from tax levy, as above | 3,392.00 |
| Total from sale of bonds, as above | 5,000.00 |
| Total from sale of orders, as above | 9,700.00 |
| Received from surplus funds of town | 1,000.00 |
| Total | $23,892.00 |

And out of said special school fund said school trustees of appellant paid for material, and employed and paid workmen, and completed said school building according to the original plans and specifications. Said building was finally completed and ready for use November 1, 1893. After paying the aforementioned estimates to the contractors, Myers and Hess, the appellant, in completing said building according to the contract, was compelled to pay the sum of

$15,429.04, in addition to the sum paid on estimates to Myers and Hess, making the total cost of the building to appellant, $19,998.45. Prior to their abandonment of the contract, appellees Hess and Myers had furnished material and done work upon said building of the value of $5,430.00, for which they had been paid $4,619.21. The material which had been brought upon appellant's said grounds by Hess and Myers, and not put into the building by them, was afterwards used by appellant in the completion of the building, and was worth $969.69, and the interest accrued on that amount since October 18, 1892, is $213.18.

That at the time said Myers and Hess abandoned said work upon said building, the plaintiff had paid in full all estimates which had been made, and said plaintiff had yet remaining in its treasury, belonging to its special school fund, $3,873.97, which might be used in the construction of said building, and which was afterwards used by said school town to complete said building; that when Myers and Hess abandoned the said work they demanded the right to remove all material then on the ground and not in the building, and the plaintiff refused to permit them to do so. And said Myers and Hess thereupon demanded of the plaintiff payment to them of $3,000.00, which they claimed was due them for work and material furnished to the plaintiff, and plaintiff refused to pay them anything; and at the same time Myers and Hess demanded that a correct estimate be made of all work and material furnished by them, and that they be paid according to such correct estimate, and plaintiff refused to make any different estimate or pay anything to said Myers and Hess.

By said failure of said Myers and Hess to complete said building according to contract, the plaintiff was

kept out of the use of the same from November 5, 1892, to November 1, 1893, a period of 360 days, and was compelled to pay the sum of $3,102.85 for the construction of said building over and above the contract price for the same. And prior to the commencement of this suit plaintiff made a demand on the defendants Corbin and Gilmore, for the settlement of said matters, and demanded payment of said extra costs, and for $10.00 per day damages for each day the completion of said building was delayed by the failure of said Myers and Hess, and said Corbin and Gilmore refused to pay any sum to this plaintiff.

The trial court stated the following conclusions of law: (1) That the contract and bond of May 26, 1892, are illegal and void, and the plaintiff cannot recover thereon in this action. (2) That defendants Myers and Hess are not entitled to recover upon their cross-complaint for work and material placed in the building while proceeding under the contract. (3) The defendants, Myers and Hess, are entitled to recover upon their cross-complaint for the value of the material placed on plaintiff's grounds by them, which the plaintiff took possession of and used in the completion of the construction of said building, and interest thereon.

The assignment of errors calls in question only the first and third conclusions of law. That part of the first conclusion which holds that the bond sued on is illegal and void is clearly error. The facts found show nothing to make that bond void for illegality. It was a penal bond, with sureties, that the contractors, Myers and Hess, would keep and perform their building contract. It rests for its consideration entirely upon the building contract. If the building contract was void for any reason, then the bond sued on would be invalid. The appellees' contention is that

The School Town of Winamac *v.* Hess *et al.*

the building contract was void because it created a debt in excess of two per cent. of the assessed value of the taxable property of the municipal corporation of the town of Winamac, which is prohibited by the thirteenth article of the state constitution, section 220, Burns' R. S. 1894 (220, R. S. 1881).

Appellant, however, contends that the building contract did not create a debt to the full extent· of the contract price of the construction of the school building, because they contend that unless the contractors did some work and furnished some material under the contract, no debt or liability of any sort whatever would ever arise against the school town of Winamac on the contract, within the principle laid down in the *City of Valparaiso* v. *Gardner,* 97 Ind. 1. And, accordingly, appellant contends that the work was to be paid for on estimates made every three weeks as the work progressed, and until an estimate was made, no debt or liability was created or existed under the contract, and then only for the amount of the estimate; and, as shown, those estimates at no time ever made the indebtedness of the town exceed the two per cent. of the taxable property. While this argument seems plausible, we need not and do not decide that it is either correct or incorrect, because it is conceded by appellees that even though we treat the whole contract price for the construction of the school building as creating a debt against the town, and applying the $4,800.00 special school fund found to be in the school town treasury, to the payment of such debt, *pro tanto,* the remaining portion of such debt would exceed the two per centum limit prescribed by the constitutional inhibition by less than one-half of the contract price. About, or in the neighborhood of, $8,000.00 of this indebtedness did not exceed the constitutional limit. The question then

arises whether that state of facts rendered the whole indebtedness void. Appellees' counsel contend that it did. But the authority cited in support of this proposition is squarely against them. The inhibitory language of the constitution is: "And all bonds or obligations in excess of such amount given by such corporation shall be void." Vol. 15 Am. & Eng. Ency. of Law, 1136, cited by appellees in support of their contention on this point, reads thus: "Generally only that part of the indebtedness incurred which exceeds the constitutional limitation will be held void. And a judgment may be recovered for the bonds first delivered up to the amount authorized." See note 2, 3, and authorities there cited. One of the cases there cited and largely relied on by appellees, is *Culbertson* v. *City of Fulton*, 127 Ill. 30, 18 N. E. 781, a decision made under a constitution precisely like our own in the respect involved here, except the limit there is five per centum. On page 38 that court said: "The indebtedness, however, can only be regarded as void to the extent of the amount of the excess over the constitutional limit. Up to and under that limit the indebtedness is valid. The inhibition operates upon the indebtedness, and not upon the form of the debt.

"In the state of Iowa, which has a constitutional provision almost identical with that now under consideration, the officers of a school district made a contract to build a schoolhouse, for which the contractors were to receive $15,000.00 in bonds of the district, when the amount of indebtedness which the district could lawfully contract was only $2,057.50. The supreme court of that state say: 'We have seen that for the excess over the prescribed limit no right of action exists against the district. The question now arises, is the district liable for the amount of the

indebtedness within the restricted limit?    We think
it is.   As we have seen, the constitutional inhibition
operates upon the indebtedness, not upon the form of
the debt.    The district may become indebted to the
amount of $2,057.50 by bond.   If the debt exceed that
amount, it is void as to the excess, because of the in-
hibition upon the power of the district to exceed the
limit, and the bonds as to the same excess are void
because of the nonexistence of a valid debt therefor.
But this restriction does not extend to the sum of
$2,057.50, for which the district had power to issue
its bonds.   That sum is a valid debt.'   *McPherson* v.
*Foster Bros.*, 43 Iowa 48.    *   *   *   It follows, that,
of the $1,700.00, levied by the ordinance of August,
1887, for the completion of the payment of the con-
tract price for the construction of the water-works,
the sum of $1,165.95 represents an illegal and uncon-
stitutional indebtedness.    *   ·*   *   But, where an
injunction is sought to restrain a tax that is in part
excessive, the excess may be enjoined and the bill dis-
missed as to the remainder."   Judgment accordingly.
To the same effect is *Stockdale* v. *Wayland School Dis-
trict*, 47 Mich. 226; *Daviess County* v. *Dickinson*, 117
U. S. 657; *Mix* v. *People*, 72 Ill. 241.

   According to these authorities, and we think they
correctly express the law, the appellees, Hess and
Myers, as contractors, had the valid obligation of the
appellant to pay them in and about $8,000.00 for the
construction of the school building.   It is true that
was only about half the contract price.   But the con-
tractors were chargeable with notice of the limits on
the power of the school board, and also with the
knowledge that the full contract price exceeded two
per centum of the assessed valuation of the taxable
property within the corporate limits of the town,
when added to existing indebtedness of the town.

*Clinton School Tp.* v. *Lebanon Nat'l Bank*, 18 Ind. App. 42; *Platter* v. *Board, etc.*, 103 Ind. 360; *Bicknell* v. *Widner School Tp.*, 73 Ind. 501; *City of Laporte* v. *Gamewell, etc., Tel. Co.*, 146 Ind. 466-75. And with that full knowledge they contracted. They therefore knew that if they, as contractors, should complete the building according to contract, they must rely on the chances of the school board receiving donations of funds with which to pay the invalid part of the debt. And however remote the chances, and however improbable the final payment of the excessive part of the debt, the legal part was a sufficient consideration to support the building contract. Had it been shown that the contractors, Hess and Myers, were deceived as to the amount of the existing indebtedness of the town, or the amount of the assessed valuation of the property of the town, through the fraud and circumvention of the school trustees of the town, by which the contractors were induced to enter into the contract, and they had taken the proper steps to rescind, we might have a very different question before us. Our conclusion is that the building contract is not illegal, and is not void, but is binding. In view of the fact that all the estimates were promptly paid to the contractors, and in view of the fact that the school board of the town went on and completed the building, and paid for it more money than the original contract price, indicates that there must have been some other reason for the abandonment of the contract by the contractors than a fear that they would not be paid, and that they could not enforce payment. Be that as it may, the building contract was not void, but was valid, and furnished a sufficient consideration for the bond sued on.

The third conclusion of law is wrong, because the facts found show that after the material left on the

ground by the contractors was used by the appellant in the building, the cost of completing the building was more than the contract price, and, instead of getting pay for that material, Hess and Myers are bound by the contract to pay that difference to appellant.

No question is raised as to the second conclusion, but it is right anyway, because, when taking all the money paid to the contractors on the work from time to time, and adding that amount to the cost and expense appellant was to in completing the building, it amounts to $3,102.85 in excess of the contract price, and this sum the contract binds the contractors to pay to appellant. And the contract, as that finding likewise shows, binds them to pay appellant $10.00 a day for every day the completion of the building was delayed beyond the contract time for completion, and the finding shows that to have been 360 days. The judgment is reversed, and the cause remanded, with instructions to restate the conclusions of law in accordance with this opinion, and to render judgment thereon in favor of the plaintiff.