## CALDWELL ET AL. v. BAUER ET AL.

[No. 22,015. Filed June 21, 1912. Rehearing denied January 21, 1913.]

1. SCHOOLS AND SCHOOL DISTRICTS.—*Action to Enjoin Building Contract.—Complaint.—Allegations as to Debt of School Corporation.—Sufficiency.*—A complaint, in a taxpayer's action to enjoin the construction of a school building, which, after alleging the outstanding indebtedness of both the civil city and school city, alleged that the school city was without money other than tuition funds arising from money paid by the State and said school city's local tuition levy, stating that the existing levies and past uncollected levies would not exceed $25,000, that the proceeds of all the levies, other than for tuition purposes, will of necessity be used before the completion of the building in the payment of the ordinary and necessary school expenses, that the building cannot be constructed except by an issue of bonds or notes to the amount of $215,000, that the contract stipulates for cash payment, and that the school city has been at all times and still is wholly without means, etc., is not open to the objection

that it states mere conclusions as to the creation of a debt and nonavailability to meet it.   p. 156.

2.   APPEAL.—*Review.*—*Complaint.*—*Special Findings.*—Where there is a special finding showing the facts fully, so that a proper judgment may be pronounced, the cause will not be reversed on appeal because of an informal complaint, unless some material fact has been omitted.   p. 157.

3.   STATUTES.—*Subject and Title.*—*School Sites and Buildings.*— *Contracts and Expenditures.*—The act of 1873 (Acts 1873 p. 60, §6560 Burns 1908, §4488 R. S. 1881), shows by its title that it is to authorize the raising of funds by cities and towns with which to erect and complete unfinished school buildings, to purchase grounds and buildings for school purposes, etc., and by §1 authorizes cities and towns, on request of the school trustees, to issue and sell bonds and turn the proceeds over to school trustees to purchase grounds or buildings, or to improve those purchased, etc., so that the act of 1879 (Acts 1879 p. 86, §6563 Burns 1908, §4491 R. S. 1881) which by its title purports to be a supplemental act, and provides that before any school trustees shall purchase any grounds for school purposes, etc., they shall file a statement with the town trustees, or common council of the city, showing the necessity for such purchase, etc., and the amount of money that will be required, is germane to the act of 1873, and its subject is sufficiently expressed in the title of that act, and is therefore not in conflict with Art. 4, §19 of the State Constitution, requiring the subject of an act to be embraced in the title.   pp. 158, 162.

4.   SCHOOLS AND SCHOOL DISTRICTS.—*Building Contracts.*—*Creation of Indebtedness.*—*Notice.*—*Statutes.*—Under §6572 Burns 1908, Acts 1903 p. 350, §1, as amended in 1909, Acts 1909 p. 100, §1, providing that before any indebtedness shall be incurred for buying grounds, or paying for necessary school buildings or repairs, the school officers shall give notice, by posting or publishing, of the aggregate debt proposed to be incurred, etc., there is no difference between an indebtedness created by contract to purchase grounds or to construct buildings, and an indebtedness created by bonds or notes to furnish the funds to accomplish those ends, notice being contemplated in either event.   p. 159.

5.   SCHOOLS AND SCHOOL DISTRICTS.—*Building Contracts.*—*Notice to City.*—*Statutes.*—The act of 1879 (Acts 1879 p. 86, §6563 Burns 1908, §4491 R. S. 1881) providing that the school trustees, before purchasing any ground or entering into any contract for the erection of a school building, shall file a statement with the town trustees, or common council, showing the necessity for the proposed expenditure and the amount of means necessary to be provided, and the act of 1909 (Acts 1909 p. 100) concerning the purchase of grounds and the erection of school buildings, but

making no mention as to requiring the consent of, or filing a statement, with the town trustees or common council, are to be construed as in *pari materia.* p. 164.

6.  SCHOOLS AND SCHOOL DISTRICTS.—*Building Contracts.—Validity.*—*Failure to Notify City.*—Contracts for the construction of a schoolhouse, whereby an indebtedness is created, entered into by the trustees of a school city without asking or obtaining the assent of the common council of the .civil city, as contemplated by Acts 1879 p. 86, §6563 Burns 1908, §4491 R. S. 1881, requiring a statement showing the necessity for the proposed expenditure, and the amount of means necessary to be provided, to be filed with the common council of the civil city, are void. p. 164.

7.  SCHOOLS AND SCHOOL DISTRICTS.—*Limit of Indebtedness of School City.*—The school city and the civil city are distinct corporate entities, and the limitation placed on the indebtedness that may be created by a school city under the act of 1909 (Acts 1909 p. 100) does not include any indebtedness against the city, but is a limitation on the school city's indebtedness as distinct from the indebtedness of the civil city. p. 164.

8.  CONTRACTS.—*Validity.*—Contracts, that are of an entirety and inseparability in character, that fall within the prohibition of the Constitution, or of a statute, are void. p. 166.

9.  MUNICIPAL CORPORATIONS.—*Powers.*—Doubtful claims to power are resolved against corporations which are agencies of the State. p. 167.

10.  SCHOOLS AND SCHOOL DISTRICTS.—*Sale of Property.*—A school corporation must pursue the statutory method of disposing of its property, since property devoted to a public use can only be disposed of by express authority. p. 167.

11.  SCHOOLS AND SCHOOL DISTRICTS.—*Powers.—Contracts and Expenditures.*—A school corporation is without authority to pay for work in advance, or from sources other than the moneys applicable to that purpose, either from the ordinary revenues, sales of property for money, or moneys derived from such loans as are authorized by statute, or by the exercise of taxing power in the future, where the fund will not be available to meet and discharge an obligation to pay if one arises. p. 167.

12.  SCHOOLS AND SCHOOL DISTRICTS.—*Sale of Property.*—Public policy, as well as the fair inference of the statute, forbids the bartering of public school property, or its sale for anything other than money. p. 168.

13.  SCHOOLS AND SCHOOL DISTRICTS.—*Sale of Property.—Executory Contracts.*—The statute governing the sale of public school property does not authorize executory contracts to sell. p. 168.

14.  SCHOOLS AND SCHOOL DISTRICTS.—*Contracts.—Validity.—Sale of Property.*—A contract between a school corporation and con-

tractors, whereby the contractors are to purchase certain school property, on the condition that they are to be awarded the contract for the construction of a school building, and made in anticipation of such contractors bidding on the construction of the building, is unauthorized by the statute controlling sales of such property, and is void. p. 169.

15. CONTRACTS.—*Validity.*—*Subsequent Contract Dependent on Fulfillment of Prior Contract.*—Where contracts for the sale of public school property and the construction of a school building are void, contracts for equipping the building, being impossible of performance, are also void. p. 169.

16. APPEAL.—*Review.*—*Harmless Error.*—*Refusal to Permit Filing of Special Answer.*—There was no error in refusing to permit defendants to file a special answer, where the evidence to support same, if admissible at all, is admissible under the general denial. p. 170.

From Lake Circuit Court; *Frank M. Pattee,* Special Judge.

Action by Carl E. Bauer, and others, as taxpayers, against George W. Caldwell and others to enjoin the construction of a school building. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*William J. Whinery,* for appellants.
*John H. Gillett,* for appellees.

MYERS, J.—Action by appellees as taxpayers of the city of Hammond against appellants, as contractors, and the school city to enjoin them from constructing a high school building in that city, under contracts with the school corporation.

The errors assigned, and not waived, call in question the sufficiency of the complaint, errors in the conclusions of law, and error in overruling the motion for a new trial. Upon proper request the court found the facts specially and stated its conclusions of law, and as the finding of facts follows the complaint closely, it will be sufficient in determining the first two assignments of error to summarize the findings.

The findings disclose that appellees were taxpayers of

the city of Hammond; that the school city of Hammond owned two distinct parcels of real estate on one of which it is proposing to construct the school building complained of; the other parcel is in the business district of the city, and now has a substantial school building upon it. That on December 19, 1910, the school city entered into a written contract with Caldwell and Drake appellants, general contractors, for the construction of a new building on the site first above referred to, at a stipulated price of $242,440, pursuant to plans and specifications theretofore adopted. The contract provided for diminution of the work and on December 27, 1910, such changes were made that by a supplemental contract the price was reduced to $182,206. On December 19, 1910, the school corporation entered into a contract with Lewis and Kitchen appellants, as contractors for heating, power and ventilating the building, at the price of $63,177, with a provision for diminution, and on December 27, by supplemental contract, the price was reduced to $32,665. Provision is made in and by each contract for the payment of 85% of the amount of labor and material furnished, payable monthly on the architect's estimate and final payment within ten days after completion of the work. At the time suit was begun, January 14, 1911, no work had been done, or material furnished under either contract and none since, and the contract provided for completion of the work by November 14, 1911. That prior to entering into said contracts original or supplemental, the board of school trustees, did not file any statement with the common council of the civil city and the latter gave no consent to the erection of the proposed building. Nor do the records of the trustees or of the council show consent of the latter. That before entering into the contracts, the trustees gave notice of the time and place of receiving bids for the work by a notice one day each week for four consecutive weeks in a daily newspaper published in the city of Hammond, which notice described the proposed building

as an industrial high school building; that at no time did
the trustees cause any notice to be given, either by publica-
tion or posting, of the aggregate debt proposed to be in-
curred, or of the character or size of the building proposed,
or of the nature of the building proposed, and that the pro-
posed building is to be for the use of the seventh and eighth
grades of the schools, and other grades and is also to be
used in teaching industrial branches and manual training,
and is proposed to be three stories in height, 172 by 336
feet in exterior dimensions with recitation rooms in each
story, and that one-third of the recitation room space is
designed to be used in teaching industrial and manual
branches, other than the common school branches, and that
the building is one-third larger than it would be if recita-
tion rooms in number seventeen on the first and one on the
second floor for industrial and manual training were elim-
inated, and larger and more expensive than would be re-
quired if such rooms were eliminated, and such rooms are
not suitable for public school, and high school purposes,
owing to the character of construction which is found in
detail, and that in carrying out the plans it will require, and
it is intended, to install and maintain large amounts of
special machinery and appliances, such as printing presses,
type, lathes, electrical appliances, foundry equipment and
the like, and it is proposed to teach therein electrotyping,
printing, binding, advanced wood working, cabinet mak-
ing, elementary wood working, machine shop, foundry, steam
and gas fitting, plumbing, electric wiring, domestic science,
and to enlarge, develop, and increase the same in the future,
and to pay teachers out of revenues of the city, to teach
such trades, and the building was to be denominated the
Hammond Industrial High School, of all of which facts the
contractors had notice when the original and supplemental
contracts were executed. That it was not the purpose to
begin teaching all the foregoing subjects at once, but to
begin with a few branches only. That the school city is

in need of a new building for grade and high school purposes, and the trustees are now renting four rooms for these purposes, owing to its want of capacity in its buildings. That the present high school building is not large enough to accommodate the pupils, and is below the present standard of modern school buildings, from the standpoint of sanitary conditions. That a large percentage of the people of Hammond are engaged in industrial pursuits, and many of the pupils quit school at an early age, and it is proposed by teaching industrial and manual pursuits, to induce them to remain in school. That the school city has for one year past had one class in industrial training, and it is proposed to increase and extend and broaden the teaching of industrial and manual pursuits, and to expend the school revenue in doing so. That before entering into the contracts herein referred to, appellants had employed an architect who had prepared the plans and specifications for the work, for which he was paid before the contracts were let $4,000, and on December 29, 1910, he was paid $2,446.13, to apply on his account for services in preparing the plans, and under his contract is to receive 3% of the cost of the building for preparation of the plans and specifications and 2% for superintending the work of construction. That the ordinary expenses for heat, light and janitor service, and necessary repairs of buildings and furniture, is $2,000 per month. That the taxable property of the city of Hammond is $8,667,500. That the taxes levied in the year 1910, payable in 1911, are $1.96 per hundred dollars of valuation from the apportionment of which a revenue will be derived for special fund of 60c per hundred dollars, including 10c for truancy fund, and 25c to the industrial high school fund. That from the 60c levy the school city will receive $28,474.26 in July, 1911, and $10,531.26 in January, 1912, and from the industrial school levy $11,864.25 in July, 1911, and $4,388.15 in January, 1912, and $600 poll tax in July, 1911, and $150 poll tax in January, 1912, and $100 from

delinquent taxes and these are all the taxes to be collected and no more from any levy or source.     The other levies constituting a total of $1.96 were made for special purposes and are applicable to them alone.   That the school city had on hand Dec. 19, 1910, to its credit in the special fund $3,-099.51, and on Dec. 27, 1910, $2,047.85, together with the further sum of $9,000 created by a special levy from year to year, which aggregate sum of $12,099.51, on Dec. 19, 1910, and $11,047.85 on Dec. 27, 1910, respectively was the sole sum or property the school city had on hand or in expectancy, applicable to the payment for work done under the contracts of those dates, except the revenues to be derived as aforesaid, from the current levies.   That on Dec. 19, 1910, the civil city of Hammond was indebted $158,000, and the school city was indebted in the aggregate sum of $95,000 upon bonds issued by it under the act of the General Assembly of 1903 and the amendments thereto, composing two sums, one a refunding bond series and denominated in the tax levies as "Special Funding Fund", of which $3,000 will come due and be paid May 15, 1911, leaving at that time $92,000, and the other special "Wallace Fund", $5,000 of which will be due and be paid Dec. 1, 1911, leaving at that time a balance of school city indebtedness of $87,000.   That the special fund will be depleted $2,000 per month from Dec. 19, 1910, by necessary charges against it.   That on Dec. 19, 1910, and for many years prior thereto, the school city owned a tract of land 222.5 feet in length north and south fronting on Hohman Street with a 14½ foot alley on the east, and 195½ feet east and west fronting north on Fayette Street, on which was a substantial brick school building midway of said lot north and south, 100 feet long and 100 feet wide used for school purposes, and is largely attended by pupils of all grades, including high school pupils. The building is in the business center of the city of Hammond, a city of between twenty and twenty-five thousand inhabitants, and Hohman Street

is one of the main business streets, and the building fronts, and the main entrance is on Hohman Street; that there is a street car line on the street upon which street cars are operated frequently at all hours, and all kinds of vehicles in great number. That the school building can be readily removed 75 feet to the east and a new entrance provided on Fayette Street. That prior to Dec. 19, 1910, the school city decided to sell part of said real estate, and passed a resolution to that effect, and caused the west 140 feet to be appraised for the purpose of its sale; and it is of the value of $144,300. The purpose of the sale was in the interest of economy, and in furtherance of the development of its school system, to make assets to be used in the construction of the new building, and more than one month prior to Dec. 19, 1910, the school city had advertised the same for sale, reserving the right to remove the old school building in the event a bidder elected to take the entire 140 foot strip, and on Dec. 19, 1910, after entering into the contract with Caldwell and Drake, the latter made a written proposition to buy 40 feet fronting on Hohman Street immediately south of Fayette Street at $900 per front foot, and to give $200 for an option for ten months at $900 per front foot, for the next 10 feet, and $650 per front foot for the next 25 feet, the proposition being conditioned upon their being awarded the contract for the new school building. The proposition was immediately accepted, and a formal contract entered into providing that the price be credited on the contract. On Feb. 4, 1911, Caldwell and Drake made a further proposition to take the remaining 182 feet at $595 per front foot, making 650 feet, or $144,300 for the whole tract, to be deducted from the contract price of the building, as payment thereon, and that was the full value of the property, and was accepted by the board, and a contract in writing entered into accordingly. That it was the purpose of the school city to acquire 50 additional feet frontage on Fay-

ette Street, abutting on the alley, and move the central building 75 feet east and have a 16 foot alley immediately east of the 140 foot strip, which the school city had arranged for, by an option held by a third person for its use, as to the 50 feet, at a cost of $27,900 in acquiring the additional ground, and making the change and being the only site to which the old building could be removed, owing to the presence of large, substantial and costly buildings to the north, south and west, and the acquisition of the 50 additional feet on the east by purchase or condemnation, and that the school building is of brick and stone construction, and its wrecking would entail great loss to the school city. Upon the findings substantially as above, the court concluded the law to be with appellees, and the work was enjoined.

The position of appellants is: (1) that it was not necessary to procure the consent of the common council before entering into the contract, and there is no negation of the discretionary power vested in the school trustees; (2) that the indebtedness of the civil city is not to be combined with that of the school city in determining the limitation of indebtedness which the latter may incur; (3) that it was not necessary that notice be given by publication or posting of the character and size of the building or of the debt proposed to be incurred; (4) that the contracts are not invalid because it is shown that industrial and manual training is proposed to be introduced in the public schools; (5) that the complaint states conclusions with respect to the available funds to meet the obligations as they become due, and does not negative the proposition that the civil city may aid in furnishing the fund; and, (6) that the proposed exchange of property for work and material is not invalid.

As all the questions presented by the complaint are presented by the findings and conclusions, except as to the point made that the allegations of the complaint on the

material question of the indebtedness are not allegations of
fact, we take that question first and treat the other ques-
tions upon the findings and conclusions of law.

The specific defect in the complaint is claimed to be its
mere conclusions as to the creation of a debt, and nonavail-
ability to meet it.  The allegations after showing the
1. outstanding indebtedness of the civil and school city
respectively, are, "that said school city is and for
more than four months prior thereto (Dec. 19, 1910) has
been wholly without means to pay, or obtain the amount
stipulated to be paid by it on any of said pretended con-
tracts * * * or any part thereof.  That at the time
of entering into of said pretended contracts on Dec. 19, 1910,
* * * ever since, and now said school city was, and
is, without any money other than tuition funds arising from
money paid by the State and said school city's local tui-
tion levy; that at that time ever since and now its existing
levies and all past uncollected levies (aside from the local
tuition levy) would not amount to $25,000, and that except
as above shown, said school city was during all of the time
aforesaid and now is, without money, credits or property,
demands due or to become due, or in expectancy, or means
of any kind, saving only its real estate, and the school-
houses thereon, all of which it uses, and are necessary for
its use in carrying on its schools; that the proceeds of all
the levies above referred to (other than for tuition pur-
poses) will of necessity have to be used prior to the date
fixed for the completion of said proposed building * * *
in the payment of said school city's ordinary, and necessary
school expenses, in carrying on said schools, to-wit, heat,
light, janitor hire, and repairs upon its said property, and
such was the intention when each of said original and sup-
plemental contracts were entered into."  That the pro-
posed building cannot be constructed except by an issue of
bonds or notes to the amount of $215,000 and the contracts
stipulate for cash payment, and a bond or note issue has

at all times been unavoidable, and no steps have been taken to provide the means necessary to build or pay for the building except as shown, and that the school city "has been at all times and still is, wholly without means".

The complaint contains no allegation with respect to trading in the property of the school city to the contractors. The special objection to the complaint on the question of indebtedness is that the foregoing allegations are mere conclusions. We do not see how it would be possible to make a complaint more specific in its showing that the current expenses would be overreached, than is here done unless the evidence should be pleaded, which is not permissible. But if we are wrong as to this proposition

2. it is clear that there is a studied attempt to show that fact, and a cause will not be reversed though the complaint may be informal, unless some fact material to the cause of action is omitted, where there is a special finding showing the facts fully, and that a proper judgment may be pronounced. *Daly* v. *Gubbins* (1908), 170 Ind. 105, 82 N. E. 659; *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202, 61 N. E. 939; *Runner* v. *Scott* (1898), 150 Ind. 441, 50 N. E. 479; *Mitchell* v. *St. Mary* (1897), 148 Ind. 111, 47 N. E. 224; *Ross* v. *Banta* (1895), 140 Ind. 120, 34 N. E. 865, 39 N. E. 732; *Woodward* v. *Mitchell* (1895), 140 Ind. 406, 39 N. E. 437; *Douthit* v. *Douthit* (1892), 133 Ind. 26, 32 N. E. 715; §350 Burns 1908, §345 R. S. 1881.

The complaint, though involving several grounds, had but one theory, and that was to declare the contracts invalid. Upon the findings of fact it is contended by appellants, that consent of the common council was not necessary before entering into the contracts upon the grounds, (1) that §6563 Burns 1908, Acts 1879 p. 86, §4491 R. S. 1881, is in conflict with §19, article 4 of the State Constitution, being the section requiring the subject of an act to be embraced in the title; (2) that being supplemental to the act of 1873 (Acts 1873 p. 60, §4488 R. S. 1881, §6560 Burns 1908), the supple-

mental matter is not germane to the subject-matter of the original act, or the subject-matter embraced in the title of the original act of 1873, *supra,* and, (3) that §6563, *supra,* has been repealed by implication, if not directly.

The history of this legislation is necessary to be considered. The original act of 1873 was entitled "An Act to authorize cities and towns to negotiate and sell bonds to procure means with which to erect and complete unfinished school buildings, and to purchase any ground and building for school purposes, and to pay debts contracted for such erection and completion, and purchase of buildings and grounds, and authorizing the levy and collection of an additional special school tax for the payment of such bonds." By the provisions of the first section of the act, cities and towns were authorized by ordinance upon request of school trustees, to issue and sell bonds not exceeding $50,000, and turn the proceeds over to school trustees to purchase grounds, or buildings, or improve those purchased, or complete improvements begun and to levy a special tax to pay interest and principal applicable to that purpose alone. These were bonds of the civil city or town, the legal distinction between the two corporations not at that time having come into general recognition.

The act of 1879, (Acts 1879 p. 86, §4491 R. S. 1881, §6563 Burns 1908), purports to be purely supplemental to existing laws by title, and by the act, not to affect any contract made prior to its taking effect. It is this supplemental act *in toto* which forms §6563 Burns 1908, *supra,* by which it is provided that "before the school trustees * * * shall purchase any ground for school purposes, or enter into any contract for the building of any school building or buildings, they shall file a statement with the trustees of such incorporated town, or common council of such city, showing the necessity for such purchase of ground, or the erection of such building or buildings, together with an estimate of the cost of such ground or building or buildings, and the amount

of means necessary to be provided to pay for such ground or building or buildings." It then prohibits any contract for the purchase of grounds or construction of buildings "until such action be approved by the trustees of such incorporated town, or by the common council of such city." A proviso of the section excepts any prior contract.

In 1903 (Acts 1903 p. 350, §6572 Burns 1908), an independent act was passed under a title authorizing school trustees of all cities and incorporated towns "to 4. borrow money, and to issue bonds or notes" therefor, providing the conditions upon which the debt may be incurred, and to levy a tax to pay the same, for the purpose of buying ground or paying for necessary school buildings, or repairs on the same. The conditions of the act are that "before any such debt is incurred," such school officers shall give notice by publication or by posting, "which notices shall state the aggregate debt proposed to be incurred, the location of the real estate, if it is proposed to buy real estate; the character and size of the building to be erected, and the nature of the improvement proposed", and if the aggregate debt proposed exceeds three-fourths of one per cent of the taxable property of such city or incorporated town, the matter was required to be submitted to an election by the voters. By §4, of the act it was provided that until "all such bonds or notes of any one issue under this act shall be redeemed" further issuance of bonds or notes was prohibited, and it is declared that "this act shall not be construed to repeal any law,  *  *  *  not inconsistent herewith, and all parts of the general laws  *  *  * which may be applicable to the general system  *  *  * shall remain in force and effect". In 1907 (Acts 1907 p. 426, §6575 Burns 1908), under a title to amend §4 of the act of 1903 school trustees were empowered to issue bonds or notes up to two per cent of the taxables of the city or town, and to issue obligations of the school city or school town up to 1¾ per centum without submitting the question to the

voters by an election, and leaving the proviso with respect to repeals, the same as in the original section. In 1909 (Acts 1909 p. 100), under a title to amend §1 of the act of 1903, and §4 of that act as amended in 1907, §1 was amended so as to exclude cities of the first and second classes, and left the conditions as originally enacted, except that no election was required, and prohibited the creation of "any indebtedness including all outstanding indebtedness" in excess of two per centum of the taxable property of such city or town, and §4, was so amended as to authorize without election, the creation of indebtedness "not exceeding all issues outstanding" two per centum of the taxable property, and the proviso as to repeal, left the same as in the original section.

It will be observed that the original act of 1873 refers only to bonds issued by the civil city, the proceeds of which were to be turned over to the school corporation, and the supplemental act of 1879 refers to the conditions under which the school corporations may contract for ground, and construction of buildings. The act of 1903, for the first time, conferred the express power of issuing notes or bonds by school corporations, to procure means to buy grounds, or build or repair school buildings, and enacts the conditions upon which "any such debt", may be incurred, and the contention of appellants is, that these conditions precedent apply only to the issuance of notes or bonds, and not to entering into contracts.

It will be noted that under this act, formal consent by the common council, or the board of trustees, is not required, but a notice of certain facts is required to be given as conditions precedent to issuing notes or bonds, either with, or without an election, as the case might be. The amendment of §4 in the act of 1907, did not affect the question before us. The amendments of §§1, 4, in the act of 1909 present the question whether the conditions precedent, of section

one, by the phrase, "Before any such debt is incurred" refers to the issuance of notes or bonds, or also to entering into contracts which "create any indebtedness." Appellees contend that it applies to both.

Under the act of 1903, school corporations are given unrestricted power, within the two per centum limit and the limitation to submit to the voters in certain contingencies, to purchase grounds and construct buildings, in their discretion upon compliance with the statute as to notice. This provision was germane to the subject in case an election was required, but where an election was not required, it could only have an advisory purpose, in advising the citizens, and as this was the only restriction upon their discretionary powers, it must in the light of former legislation have a purpose, as a condition precedent to the exercise of their powers. The same thing is true as to the act of 1909, except that the provision as to notice could no longer apply to an election, which is eliminated by that act. Clearly no indebtedness can be created in excess of two per centum, whether in form of notes, bonds or any other form, but if we were to hold that "any such debt" refers only to indebtedness created by bonds or notes, the spirit of the act as to publicity would be violated, for there is no reason aside from giving publicity, for the requirements in case of issuing notes or bonds, and the same reason obtains as to any other form of indebtedness; the effect upon the citizens is the same in either case, and as the legislature evinces an increasing of power in the school corporations, publicity is all that is left to the taxpayer, except such as he may have upon general principles of law. It may be conceded that the language is inapt to express the requirement for giving notice of a proposed contract, but the reason and the necessity is the same, as well as the spirit and intent of the act. The subject is the creation of indebtedness; if the indebtedness may be created by the formality of con-

tract, instead of by the formality of bonds or notes, it will be seen at once that the spirit of the act, its only apparent purpose as to advising the citizens may be entirely evaded, and the purpose thwarted.   If there are funds available to make the purchase, or construct the building, the statute can have no application to contracts made under such conditions, but if there are no funds, and the contract creates the indebtedness, under appellants' theory, the taxpayers may be obligated up to two per centum of their taxable property, without any information on the subject of the expenditure, and a debt created which is just as obligatory as a bond or note.   There is no difference in fact, or in effect, between indebtedness created by contract to purchase ground or to construct buildings, and indebtedness created by bonds or notes to furnish the funds to accomplish those ends, and as the whole subject of the act is that of indebtedness rather than its form, it is a fair implication that it should apply as well to the occasions or conditions creating the indebtedness, as to the form it assumes, which is of secondary importance. The subject is that of incurring indebtedness for purchasing grounds, and building and repairing schoolhouses, and it is the debt, and not its form, which is the material thing.

It certainly must have been contemplated that the funds would be provided before the work is undertaken, and that probably accounts for the lack of more specific language as to notice in case of letting a contract, for it would not be essential if the notice is given in advance of the issuance of notes or bonds, but to hold that the contract may be let, and the obligation incurred, and then in order to issue bonds or notes to meet the obligation thus incurred, to give the notice would be to sacrifice the substance to the form.   To say, as we would otherwise be bound to, that there is no check upon the powers of school corporations, if compliance is made with the act of 1909 only, enforces the propriety, if not necessity of holding the supple-

mental act of 1879 as in force if it can consistently be done, and we find no serious difficulty in the way.

Appellants concede and insist, that the clause in regard to giving notice of the location of real estate and size and character of buildings, etc., applies only to the issuance of the notes or bonds, and under that view, or under the broader view that it refers to all obligations thus arising, there is no conflict whatever between the supplemental act of 1879, and the act of 1909; they refer to entirely distinct subjects in either case, and are susceptible of being enforced without the slightest disharmony. Argumentatively speaking, if it was necessary in 1879, when school corporations had not the declared power of creating obligations by note or bond, but only power over the expenditure, to require assent of the body which created the officers of the school city, it is manifest that when the power of creating obligations is conferred, there is more reason for requiring the assent, than under the act of 1879, besides the subsequent acts specifically deal with the subject of repeal, and only repeal inconsistent acts. Nor can we concur in the contention of appellants, that the supplemental act is not germane to the subject of the original act, and not embraced in the title. The subject of the act of 1873, is the raising of funds to purchase grounds, build schoolhouses, etc., and an act which provides for procuring the assent of the civil city to the expenditure of the money which it provided, is certainly very nearly connected with the general subject of the act, and the title as well, and that is sufficient. *Thorn* v. *Silver* (1910), 174 Ind. 504, 89 N. E. 943, 92 N. E. 161; *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 74 N. E. 985; *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228, 68 N. E. 266; *Clarke* v. *Darr* (1901), 156 Ind. 692, 60 N. E. 688; *Republic Iron, etc., Co.* v. *State* (1903), 160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136; *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100, 55 N. E. 751, 57 N. E.

710; *Parks* v. *State* (1902), 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134, 51 N. E. 924; *Isenhour* v. *State* (1901), 157 Ind. 517, 62 N. E. 40, 87 Am. St. 228; *State* v. *Arnold* (1895), 140 Ind. 628, 38 N. E. 820; *State* v. *Bailey* (1901), 157 Ind. 324, 61 N. E. 730, 59 L. R. A. 435; *State, ex rel.,* v. *Board, etc.* (1906), 166 Ind. 162, 76 N. E. 986; *Bowlin* v. *Cochran* (1903), 161 Ind. 486, 69 N. E. 153.

As it appears that no assent to entering into the contracts was ever asked, or obtained from the common council of the civil city, we hold that the contracts are for that reason void. We hold that the act of 1879 and the act of 1909, are to be construed in *pari materia,* and that notice is required under the act of 1909, in case an indebtedness is to be incurred by contract, as well as in case of the issuance of notes or bonds, as being within the spirit and intent of the latter act, as much so as if it were written therein. *Sahm* v. *State, ex rel.* (1909), 172 Ind. 237, 245, 88 N. E. 257; *Conn* v. *Board, etc.* (1898), 151 Ind. 517, 51 N. E. 1062; 2 Lewis' Sutherland, Stat. Constr. (2d ed.) §585.

Appellees are in error as to the requirement that the limit of the school city's indebtedness is fixed by including that of the civil city. The language is not as specific as it might be, but it is sufficiently explicit; the one corporation is as distinct an entity as the other, and neither has preference over the other as to creating indebtedness of its own, for obvious reasons, and the indebtedness is distinct. The case first marking the distinction between the two corporate entities was *Wilcoxon* v. *City of Bluffton* (1899), 153 Ind. 267, 54 N. E. 110, where bonds were issued under the act of 1873 above referred to, by the civil city, though for school purposes, were held to be the obligations of the civil city, and to be computed as part of its indebtedness. In *Heinl* v. *City of Terre Haute* (1903), 161 Ind. 44, 66 N.

E. 450, it was held that as under the law at that time, school trustees could not create a liability either against the school city or the civil city, such claimed indebtedness could not be included in estimating the debt of the civil city. In *Campbell* v. *City of Indianapolis* (1900), 155 Ind. 186, 57 N. E. 920, under a different statute however from the act of 1873, there had been pointed out the separateness of corporate entity between the civil and school city of Indianapolis. In this state of the law the act of 1903 was passed, March 9, 1903, presumably with the foregoing decisions in mind, and by that act the school corporations were restricted as they are by the act of 1909 to two per centum of the taxable value, to the indebtedness they may create, as distinct from the indebtedness of the civil city or town. This was recognized in *Eddy Valve Co.* v. *Town of Crown Point* (1906), 166 Ind. 613, 617, 76 N. E. 536, where the cases of *Wilcoxon* v. *City of Bluffton, supra,* and *Scott* v. *City of Goshen* (1904), 162 Ind. 204, 70 N. E. 79, are cited to the proposition that bonds for school purposes issued under the act of 1873 are obligations of the civil city. Conversely, it must be true that bonds or notes or other indebtedness of school cities or towns after the law went into effect authorizing them to create debts can not be counted as the civil city's liability or the civil city's liability estimated against the school corporation, for if it were not so, the one could practically render the other incapable of carrying on its functions, and also enforces our view as to these statutes being considered in *pari materia,* so that there may be advised and harmonious action, in consonance with the necessary requirements of each corporation, with the minimum of expense to the taxpayer, who is the ultimate burden bearer. The language of the act does not force appellees' contention, and the spirit and intent in view of the settled law with respect to the distinctness of the corporate entities, and the contemporaneous history of the decisions and the legislative acts, leads

to the conclusion that appellees are in error as to the question of the indebtedness of the corporations being required to be considered and taken together.

We come next to the question whether it is shown that the execution of the contracts in question was the creation of a debt in violation of the 13th amendment to the Constitution of the State of Indiana, or §§1, 2, Acts 1909 p. 100. It is found that the taxable property is valued at $8,667,950, and the indebtedness of the school corporation $95,000, created since 1903, with provision made for retiring $3,000 May 15, 1911, and $5,000 December 1, 1911, leaving a balance of $87,000. The limit of indebtedness permissible to the school city is $173,359. Deducting its indebtedness of $87,000, leaves a margin of $78,357. The contracts entered into and here attacked, aggregate $214,487, with payment of 85 per cent of the estimates to be made monthly, and the residue on completion of the work, which was fixed at November 14, 1911. The time for making a levy, if a sufficient levy could have been made, so as to be available in 1911, had passed, and no levy could have been made until 1911, payable in 1912. No provision was made for any part of the contract price, unless it was by the agreement of Caldwell and Drake to take part of the Central School property, at $144,300, which if permissible would still leave a deficit of $37,896, on their contract, and a deficit of $32,665, on the Lewis and Kitchen contract, with no provision for either. It was held in *School Town of Winamac* v. *Hess* (1898), 151 Ind. 229, 50 N. E. 81, that a contract was not void, some portion of which required a payment in excess of the constitutional limit, and in *Cason* v. *City of Lebanon* (1899), 153 Ind. 567, 576, 53 N. E. 768, it was said: "If the contractors were willing to take the chances of the city being able to pay without violating the Constitution of the State, the citizens of the city have no ground for complaint." But con-

8. tracts, the necessary effect of which, by reason of the entirety and inseparability of their character, fall

within the prohibition of the Constitution, or of a statute, have been held void. *Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95, 106 Am. St. 201, 2 Ann. Cas. 978; *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165, 70 N. E. 146; *Gas Light, etc., Co.* v. *City of New Albany* (1901), 156 Ind. 406, 59 N. E. 176; *Consumers Oil Co.* v. *Nunnemaker* (1895), 142 Ind. 560, 41 N. E. 1048, 51 Am. St. 193.

If, when estimates are made, the school corporation has funds on hand to pay, and does pay, no debt arises, otherwise it does; so the question is made to revolve around the proposition whether a debt is created by the contract, and whether the agreement to take the real estate as a payment *pro tanto*, is permissible as of a cash payment, so as to remove the ban of what would otherwise create a debt in excess of the constitutional and statutory prohibition, and whether the contracts are wholly void.

9. Doubtful claims to power are resolved against corporations which are agencies of the State. *City of Elkhart* v. *Lipschitz* (1905), 164 Ind. 671, 74 N. E. 528; *Voss* v. *Waterloo Water Co. supra; Scott* v. *City of Goshen, supra; Pittsburgh, etc., R. Co.* v. *Town of Crown Point* (1896), 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684; *State, ex rel.,* v. *Moore* (1895), 45 Neb. 12, 63 N. W. 130.

10. Property devoted to a public use can only be disposed of by express authority, and a school corporation must pursue the statutory method of disposing of its property. *Lake County Water, etc., Co.* v. *Walsh* (1903), 160 Ind. 32, 65 N. E. 530, 98 Am. St. 264; *Platter* v. *Board, etc.* (1885), 103 Ind. 360, 2 N. E. 544; *Board, etc.,* v. *Fertich* (1897), 18 Ind. App. 1, 46 N. E. 699; 26 Am. and Eng. Ency. Law (2d ed.) 665.

11. The school corporation was without authority to pay for the work in advance, or from sources other than the moneys applicable to that purpose, either from the ordinary revenues, sales of property for money, or

moneys derived from such loans as are authorized by statute, for those purposes, or by the exercise of the taxing power in the future, where the fund will not be available to meet and discharge an obligation to pay if one arises. *Wallis* v. *Johnson School Tp.* (1881), 75 Ind. 368; *Scott* v. *City of Goshen, supra; State, ex rel.,* v. *Board, etc.* (1897), 147 Ind. 235, 46 N. E. 525; *Windsor* v. *City of Des Moines* (1900), 110 Iowa 175, 81 N. W. 476, 80 Am. St. 280.

The authority to sell as applied to authority between individuals, is authority to sell for money, and not to barter, and strong reasons of public policy forbid any differ-

12. ent rule as applied to public property, in addition to the fair inference that this is the statutory requirement. *Fitzhugh* v. *Franco Tex. Land Co.* (1891), 81 Tex. 306, 16 S. W. 1078; *Dyer* v. *Duffy* (1894), 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339; *Rodburn* v. *Swinney* (1889), 16 Can. S. C. 297.

We have been cited to no statute, and have been able to discover none, applying specifically to sales by trustees of school towns and school cities, prior to the act of 1911.

It will be noted that §§6615, 6616 Burns 1908, §4511 R. S. 1881, Acts 1907 p. 575, seem to apply only to the trustees of school townships, and both the parties have here treated those sections as the only ones which can apply. We need not determine that question here, in view of our conclusions on other points requiring the affirmance of the judgment, farther than to suggest that it seems to have been the legislative construction in enacting the act of 1911 (Acts 1911 p. 94), that the prior laws did not authorize such sales. The matter is put at rest now by the act of 1911, and a sale for cash is required, which is a further recognition of the requirement under previous laws. It will thus be seen

13. that executory contracts to sell are not authorized, and the possibility that a failure of title, or other cause of failure to consummate the contract might clearly

leave an indebtedness, is a sufficient reason for denying the power, as not authorized, and against public policy. *Voss* v. *Waterloo Water Co., supra; Scott* v. *City of Laporte* (1904), 162 Ind. 34, 68 N. E. 278, 69 N. E. 675; *Muncie Nat. Gas. Co.* v. *City of Muncie* (1903), 160 Ind. 97, 66 N. E. 436, 60 L. R. A. 822, and cases cited; *McKinnon* v. *Mertz* (1909), 225 Pa. St. 85, 73 Atl. 1011; *State* v. *Atlantic City* (1887), 49 N. J. L. 558, 9 Atl. 759.

If the character of the contract here sought to be upheld could be justified, for it is fairly open to the inference if not to the conclusive conviction that the plan adopted, was pursuant to an original purpose, not corrupt, or unreasonable, if applied to affairs between individuals, or if authorized, then the matter of competition is much restricted, if not destroyed, for the small contractor might not be able to carry a work of such magnitude wholly upon his own resources or credit, and for that reason, if for no other, the statute should be held to authorize sales of such property only for money, and with the fund produced, put all bidders upon an equality. The effect of the transaction is to constitute a barter, for the proposition by Caldwell and Drake to take the property is expressly conditioned upon being awarded the contract for constructing the school building, showing that the exchange was in anticipation of their bidding.

If the agreements with Caldwell and Drake are invalid, as we hold they are, because, without exchanging the property, it is conceded that a debt would be created in excess of that permissible, it necessarily follows that the other contracts are so necessarily connected with, and impossible of performance without the construction of the building proper, that the whole must fail.

It is insisted by appellee that there is no authority of law for the establishment of manual and industrial training

schools in Hammond. As the judgment must be affirmed, for the reasons already given, the determination of that question, one way or the other, would not affect the result, and for that reason it is not considered.

Finally it is complained of by the appellants that the court erred in overruling their motion to be allowed to file an additional answer. After the suit was begun, and on March 17, 1911, the school city and the contractors entered into a supplemental agreement extending the time for the completion of the contracts to March 14, 1912, and appellants sought to file an additional paragraph of answer, under which they might show that fact. There was a stipulation that "all defenses may be made under the answer of general denial." There could have been no error in this refusal, for if the evidence was permissible at all, it was admissible under the general denial.

Appellants' theory is that the conditions had been so changed by the supplemental agreement, that means to construct the buildings might have been provided for paying for them. Under our view, as to the consent of the common council being required, and notice of the proposed expenditure, a sale being required for cash, the evidence was immaterial.

After the evidence was concluded, and the cause was submitted, appellees were permitted over objection and exception, to file an amended second paragraph of complaint, and dismiss the first paragraph. We are not advised as to the character of the amendment. The original complaint is not in the record, and we cannot know its allegations, and the question is not presented.

The sole question which came to this court in the case of *Monical* v. *Heise* (1912), 49 Ind. App. 302, 94 N. E. 232, in the opinion, on which the case was sought to be transferred, was whether the act of 1909 (Acts 1909 p. 100),

repealed the two acts of 1907 (Acts 1907 p. 576, Acts 1907 p. 655), and no other question was presented.

The judgment is affirmed.

NOTE.—Reported in 99 N. E. 117. See, also, under (1) 31 Cyc. 49; (2) 3 Cyc. 383; (3) 36 Cyc. 1028; (5) 36 Cyc. 1147; (7) 35 Cyc. 975; (9) 28 Cyc. 265; (10) 35 Cyc. 945; (13, 14) 35 Cyc. 945; (15) 9 Cyc. 562. As to the sufficiency of the title to a statute within constitutional requirements, see 64 Am. St. 70; 79 Am. St. 456; 86 Am. St. 267. For a discussion of two or more political bodies wholly or partly coincident in territory as separate bodies for the purposes of a debt limit under the Constitution, see Ann. Cas. 1912 C 449.